## NATHAN PUTNAM *vs.* BENJAMIN SMITH, JUN.

Where one conveyed a piece of land on which there was a large quantity of free-stone, disconnected from any fixed ledge, and partly imbedded in the earth, and by the deed reserved *all the free-stones on said land to himself, his heirs and assigns, with the privilege of carrying off said stones,*—it was held, that the reservation did not extend to a ledge of free-stone under ground, and not known to the parties at the time of the conveyance ; and that parol evidence was admissible to show the situation and quantity of stones upon the surface at the time of the conveyance, and that the ledge under the surface was not then known to the parties.

This was an action of *trover* for sixty tons of free-stone, alleged to have been taken and carried away by the defendant, and converted to his own use. It appeared that on the 9th day of August, 1814, the plaintiff conveyed to one Minard sixty acres of the south part of lot no. 5, in the town of Grafton, and the deed contained the following reservation ; viz : " with the reservation of all " the free-stones on said land to myself, my heirs, or assigns, with " a privilege of carrying off said stones in the most convenient " place to the highway." The defendant claimed a right to the stones in question by virtue of a subsequent deed to him from said Minard, conveying, without any reservation, the land above mentioned, and from which the stones were taken. The plaintiff claimed the right to maintain the action by virtue of the said reservation contained in his deed to Minard. At the trial in the county court the plaintiff introduced evidence showing, that the defendant had taken and converted to his own use about sixty tons of the stone ledge, on said land, of the kind which in that vicinity is called *free-stone*, taking the same from the ledge from six to

Windham,
February,
1829.

Putnam
vs.
Smith.

twelve feet under the surface of the ground ; and that tne ledge extended southward, and was above the surface and visible from two to four rods south of the place where the defendant dug the stone in question, and a little oft of lot no. 5. The defendant produced a deed from the plaintiff to said Minard, dated August 30, 1814, conveying to him two acres of land adjoining the said sixty acres, on the south side, being the same land on which said ledge was above the surface of the earth, as before mentioned : also a deed from Minard to the defendant conveying the said two acres, dated March 20, 1823. The plaintiff objected to the admission of these deeds as evidence ; but the court overruled the objection. The defendant then introduced testimony—that was objected to by the plaintiff, but was admitted by the court—which tended to show, that when the plaintiff conveyed the said sixty acres to Minard, there were from thirty to one hundred tons of free-stones lying upon the land, disconnected from any fixed ledge, which were of different sizes, from very small to two or three tons in weight ;— that these were somewhat imbedded in the earth, the upper parts being above ground, and the most elevated points weatherbeaten and of no value ; but lower down they were solid, and were useful for fire-places, jambs, manteltrees and inkstands—That at that time no ledges were worked or opened in the vicinity of the ledge in question ; and that it was not then known, that said ledge extended under the surface as far north as the place where the defendant severed the stones in question.

The plaintiff requested the court to instruct the jury, that said reservation included all the free-stone and free-stones upon the said sixty acres, as well the fixed ledges as the loose stones. But the court charged the jury, that if they believed the testimony above mentioned, with regard to the situation and quantity of stones upon the surface, and the situation of the ledge, as then unknown to the parties, they would consider the reservation satisfied without extending to said ledge. The plaintiff excepted to the decision and charge of the court ; whereupon the cause was ordered to pass to this Court.

*The plaintiff's counsel contended,*—1st. That his deed to Minard extended to all free stone on or under the surface of the land.—*Leonard vs. Judd, Bray. Rep.* That the stone is a part of the soil—and *on* is *super*—not the surface, but the bottom.

2d. That the deeds offered by defendant were not admissible to affect the construction of the exception in plaintiff's deed. The

Windham,
February,
1829.

Putnam
vs.
Smith.

deeds of Minard to defendant are *inter alios*. The deed, plain-
tiff to Minard, confirms plaintiff's construction of said exception.
He then owned both lots, and sells the stone on the one—having
as he supposed reserved the stone on the other lot. All the
deeds to defendant are of a long subsequent date.

3d. The evidence of there being other stones, was inadmissi-
ble. It is inadmissible to vary the construction of the deed. It
had no tendency to show the actual intention of the parties.

4th. The same may be remarked, in relation to the testimony,
that no ledges had been opened in the vicinity.

5th. And the same that the extent of the ledge was not
known. It was equally unknown to both parties, and it might
well be said it could not have passed had there been no exception.
But though the fact was not then known, that is, ascertained, yet
it was from the nature of the case a probable fact. It is objected
that there is no reservation of *digging* the soil. When a thing is
granted, all the means to obtain it are granted also.—*Shep. Touch-
stone*, 85. The defendant's construction would exclude all the
stone embedded in the soil. The verdict was found on all the
facts : if any were improperly admitted, the plaintiff is entitled to
a new trial.

*The counsel for the defendant*, contended, That the exception
did not entitle the plaintiff to any *rocks* or *ledges*, or to any *stones*
wholly buried *in* the land ; but only to such stones as were *on* or
*upon* the land.

I. Because such is the fair and grammatical construction of the
words. They are called free *stones*, and not freestone, which is
the usual and proper mode of expression, when speaking of the
kind and not the individuals. Thus, we say all the freestone, if
we mean all of the kind ; but, speaking of particular individual
ones, we say the "*free stones, those free stones* ;" besides, the
words are not even compounded into one; as is always the case
when speaking of the kind, as all the *freestone ;* but, as if meant
to preclude such a meaning, it is not only put in the plural, but is
decompounded, and the two words used, *free stones*. As if still
more to prevent dispute, when they are subsequently spoken of in
the deed, they are called "stones" simply, viz. " carrying off said
stones;" from which it is evident that the parties were speaking of
something which in the state it then was, might be carried off ;
but whoever heard a ledge called a stone, or of carrying off an en-
tire ledge, calling it a stone ? In this view the difference between

WINDHAM,
February,
1829.

Putnam
vs.
Smith.

the description here, and that in the lease in *Brayton's Reports*, is quite manifest; for there it was *rocks* and stones; and a ledge may be a rock, or composed of rocks. They are not only said to be stones, but stones *on* the land, which, in fair grammatical construction, can only apply to such things as are in some part superior to, or forming the surface; the preposition *on* not being used in common acceptation in reference to any thing which *wholly* encloses it. It is apprehended that the only difficulty of construction, in regard to this word, arises from the difficulty of drawing the limit where the thing spoken of is partially enclosed; but that when the thing is *wholly* enclosed, or *wholly* superior, the difficulty vanishes. The language used in the sense, for which the plaintiff contends, is not conformable to legal language, or to the words used in conveyancing. In all cases in the books where mines, quarries, coal, stone, &c., in the bowels of the earth, and on the surface, are both conveyed, or excepted, the words "*in and on* the land or premises" are used. See *Cruise, Wood, Bridgeman, passim.* And if there is any departure from this usual language, it has been made by the plaintiff himself. The intention is still more apparent from the circumstance, that while the plaintiff has been careful enough to reserve the right of way to carry off the stones on the land, he has reserved no right of digging or subverting the soil for the purpose of obtaining stone under the soil. If it be said, this right is incident to the exception, so is the right of way, and the plaintiff having omitted the one, while he expressly mentioned the other, shows that the former was not intended. If it be said, that this construction would deprive the plaintiff of the power of raising the stones, which are confessedly reserved, by preventing him from inserting underneath them the proper levers, &c., the answer is, that there is a wide difference between using the means necessary to carry off stones *lying upon the land, although somewhat bedded,* (as the case finds these to be,) and digging to discover, and raise from the bowels of the earth, any quantity which may be situated between the surface and the centre. Besides, would not such an exception, as is contended for, be void, as enabling the plaintiff to wholly subvert the defendant's soil, and deprive him of the profits of his land? *Shep. Touch.* 79; *Moore,* 870; *Co. Litt.* 150. Nay, more, he would be entitled to all the stones of that quality, whether great or small, and in a soil so filled with them it would be a complete defeat of the grant. Furthermore, the construction contended for by the plaintiff, is the most favorable which could possibly be

**79**

WINDHAM,
*February,*
1829.

Putnam
*vs.*
Smith.

made for the grantor, and the most unfavorable for the grantee; which is directly contrary to the rules of law.

II. For it is a primary rule of law, that a deed shall be taken most strongly against the grantor, and that if it can be construed different ways, it shall be taken most favorably for the grantee. *Plowden*, 161, *Throckmorton* vs. *Tracy*; *Sheppard's Touchstone*, 87; *Co. Litt.* 183; 1 *H. Blackstone*, 27, *Davis* vs. *Williams*; 4 *Mass.* 205, *Worthington* vs. *Hilyer*; 16 *John.* 172, *Jackson* vs. *Blodget.* And the same rule applies to an exception or reservation, viz. that it shall be taken most strictly against the exceptor or reservor.—*Dyer*, 377 a, *Pasmer* vs. *Prowse; Plow.* 171; *Hill* vs. *Grange, Moore* 113, *pl.* 254; *Ib.* 870, *pl.* 1208; 10 *Co.* 106-8, *Humph. Lofield's case*; 1 *Brownlow*, 61, *Young* vs. *Milton*; *Ib.* 108, *Smith* vs. *Newsom*; *Yelverton*, 159, *same case*; *Shep. Touch.* 100; *Latch.* 44, *Seely* vs. *Aole*; *Hardres.* 89, *Cather* vs. *Merrick*; 2 *Mad. R.* 93, *Ingram* vs. *Tothill*; 3 *Mad.* 230, *Osborn* vs. *Stewart*; 2 *Saund.* 165, *L*\*\*\*\*\* vs. *Carue*; 4 *Taunton* 316, *Windham* vs. *Way*; 3 *Johnson*, 382, *Jackson* vs. *Hudson*; 8 *Johnson*, 406, *Jackson* vs. *Gardner.* Nor does the case in *Brayton*, 230, *Leonard* vs. *Judd*, militate against defendant, being perfectly conformable to the doctrine laid down; for there it was construed *most strongly* against the *lessor*, and the lessee permitted to dig for the purpose mentioned *to any extent.* Besides, it was a lease of *rocks* as well as stones, and from the nature of the country, probably all these was for the grant to operate upon. If it be asked how the court can know the nature of the country? it *is* answered quite as well as the court of *C. P.* could know that Devonshire was an apple country, in 4 *Taunton* 316, *Windham* vs. *Way*, which brings us to consider

III. The admission of parol testimony. Defendant contends, that it was properly admissible to show the situation of the premises, and extent of the grants, and to rebut plaintiff's parol testimony of the usage of the words.—4 *Taunton ut sup.* supposes such inquiry. In 1 *H. Bl.* 27, *Davis* vs. *Williams*, it is said by *Lord Loborough*, that a *devise of all the lands* will not carry leasehold lands if there are freehold to which the words will apply; and this can only be known by parol testimony.—1 *Taunton*, 500, *Roberts* vs. *Carr*; 1 *D. & E.* 701, *Doe* vs. *Burt*, 10 *Mass.* 459; *Leland* vs. *Stone*; 1 *Mason*, 19; \*\*\*\* vs. *Dickson*; 6 *Mass.* 116, *Foster* vs. *Woods.* See also 16 *Johns.* 14, *Livingston* vs. *Ten Broeck*; 3 *Mass.* 361, *Adams* vs. *Frothingham*; 2

*East*,15, *Doe* vs. *Dixon.* By this testimony it appears, that there were sufficient stones to satisfy the exception without resorting to the ledge ; that the ledge could not then have been meant by the parties to be excepted, since it was utterly useless ; that it was not even known to exist in or on the premises ; that if plaintiff's parol testimony showed that, in that neighborhood, the stones were called *free stones,* the second deed shows that, when speaking of the kind, it was then called *freestone,* viz. " a quantity of freestone."

TURNER, J.——This case has been so elaborately argued that it is not necessary in deciding it, to enter into a minute and particular investigation of the several questions raised in the county court. As to the deeds which were objected to, and admitted, they were of no importance. They had no legal bearing on the case : nor were they calculated to mislead the jury. The only point is, whether the stone in question was included in the reservation contained in the deed from the plaintiff to William Minard. If the property passed by that deed, it is of no importance to the plaintiff, in whom it was ultimately vested, or what a subsequent grantee might think of the rights acquired by virtue of it.

The principal points raised at the trial in the county court were, 1st. Did the deed, on the face of it, reserve the ledge from which the stone in question was taken ? and 2d. Was parol evidence admissible to explain the deed, or, in other words, to direct the application of it ? The county court considered it doubtful whether it was the intention of the grantor, and so understood by the grantee, that the ledge in question should be reserved ; and they admitted parol evidence to show the situation of the premises at the time of the conveyance. It is not now important for us to decide, whether the deed, on the face of it, conveyed the property in question or not, as the parol evidence was admitted, and if legally so, then the deed is to be construed in connection with the evidence. So it becomes important to decide with regard to the legality of admitting the parol evidence.

The rules of law, with regard to the interpretation of deeds, have been long since settled, and, as the Court believe, settled on the soundest principles of public policy and general utility. Where the ambiguity arises on the face of the instrument, it must be solved by the deed itself. But if the meaning of a deed is clear and plain on the face of it, but doubts arise on the application of it, those doubts may be removed by extrinsic or parol evidence.

WINDHAM,
*February,*
1829.

Putnam
*vs.*
Smith.

The deed in question is plain on the face of it : it reserved all the freestones on the land, and the right of carrying them off to the highway. Every person would clearly understand what was meant by the reservation. But in carrying the contract into effect doubts arise from the situation of the property at the time of making the grant ; and, on the clearest principles of law, these doubts may be solved by extrinsic circumstances, showing that it could not have been the understanding of the parties that the reservation in the deed should extend to the ledge in question. We consider that the evidence was legally admitted, and that, taking the deed in connection with the parol evidence, the construction which the county court gave to it fully carried into effect the original intention of the parties.

The case of *Leonard* vs. *Judd*, *(Bray. Rep.* 230,) is very shortly and loosely reported, and it would not be safe to settle any legal principles on the authority of that case. That, as it appears from the report, was a case of a lease for 999 years, of certain premises, with the privilege of taking all the rocks and stones on the land. The Court decided that the lessee was not liable for digging, to any extent, for rocks, provided, he did not wantonly dig up the land to the injury of the lessor. We do not see how any question could have arisen in that case. The lessee would have had a right to occupy and possess the land during the whole term if the rocks and stones had not been mentioned in the lease ; and, most assuredly, when liberty was directly given by the lease to take the rocks and stones, the lessee had a right to make use of proper means to get them. It must be presumed that the rocks and stones were, at least, a part of the object which the lessee had in view in procuring the lease. That case has but a very remote resemblance to a case where one sells a farm, and reserves the right of carrying off the free-stones on the land to the highway.

From a careful examination of all the authorities cited, and others which were thought to have a bearing on the cause, we think the decision and charge of the county court were right, and that the reservation in the deed, taken in connection with the extrinsic evidence introduced on the trial, did not extend to the quarry beneath the surface of the earth, from which the stone in question was taken.

Judgement of the county court affirmed.

*Everett*, for plaintiff.

*Bradley, Phelps & Kellogg*, for defendant.