## M. Noyes & Co. *v.* Thomas H. Canfield.

*Written contracts, when and how far explainable by parol testimony.*

Parol testimony cannot be received which gives to a party the use of other language than that which he has employed in his written contract, and where the words of such a contract are clear and unequivocal, and there is no uncertainty as to the object and extent of the contract, the words used are not to be controverted by the introduction of parol evidence, nor can other words be thereby added to or substituted for them.

But whenever an ambiguity arises from extrinsic matters, or when, from the language used, the object or extent of the contract cannot be determined, parol testimony is admissible to remove the ambiguity or to ascertain the object upon which the contract was designed to operate.

In the construction of a written contract, where a general term is used which is susceptible of divers meanings or is equally applicable to several subjects, parol testimony is admissible to show the situation of the parties in reference to surrounding circumstances, for the purpose of enabling the court to more perfectly understand the intent and meaning of the parties in the use of the language which they have adopted.

The defendants contracted in writing with the plaintiffs to transport " their freight" during the season, at a given price per ton. In an action upon the breach of this contract, *it was held*, that, for the purpose of showing the meaning of those words, as used by the parties, in that contract, parol testimony was admissible, showing the nature, character and extent of the plaintiff's freighting for several years previous to the making of the contract, that the defendant during those years had done the plaintiff's transportation under similar contracts, and that the defendant was familiar with the plaintiff's business and the kind of property he had had transported.

ASSUMPSIT upon a contract in writing by the defendant to transport the plaintiff's freight, during the navigable season of 1852. The cause was referred and the referees reported the following facts.

The plaintiffs and defendant on the 10th day of April, 1852, entered into the following agreement in writing, viz:

"Burlington, April 10, 1852.

"Memorandum of agreement this day made and concluded by "and between Thomas H. Canfield of the first part, and of M. "Noyes & Co. of the second part witnesseth,

"That the party of the first part doth hereby agree to and with "the party of the second part, to transport in a prompt and busi- "ness like manner their freight, during the navigable season of 1852, "between the places hereinafter mentioned, as follows, viz:

per ton.

"All freight from New York to any port on Lake Champlain, $2.75
" " " Troy or Albany " " " 2.25
" " " Boston via N. Y. City " " 5.00
" " " any port on Lake Champlain to New York, 2.75
" " " " " " Troy or Albany, 2.00
" " " Burlington to Troy or Albany, 60
" " " any port on Lake Champlain, to Boston, 5.00
" " " " " " to any port on do. 60

"and all other freight upon the rates herein indicated between "places not referred to, or over which the said first party has any "control or influence, to be made at proportionate rates.       *
"  *      *      *      *      *      *      *      *      *      *      *

"It is understood that a ton is 2000 pounds and that wool is "excepted in this contract, except at special rates, say from Rouses "Point to Burlington, $1 per ton.      *      *      *      *      *
"  *      *      *      *      *      *      *      *      *      *      *

"In consideration of the engagements of the first party, the second "party hereby agrees to give their freighting to the said first party "during the season of 1852.

(Signed)                "THOS. H. CANFIELD,
                        "M. NOYES & Co."

The defendant was at that time running a line of boats called the Merchant's Lake Boat Line.

In September, 1852 the plaintiffs notified the defendant that they had from six to seven hundred tons of pressed hay for the defendant to transport to New York that fall, under said contract. The defendant declined to transport said hay under the contract and

claimed that he was not bound by it to do so.    The plaintiffs claimed to recover damages on account of this refusal of the defendant.

Upon the hearing before the referees, the defendant offered evidence to show the situation of the parties at the time of making said contract, the nature, extent, and character of the plaintiffs' freighting for several years, prior to, and up to time of making said contract; that for two or three years next preceding the making of said contract the defendant had, in connection with his copartners, done the plaintiffs' freighting business under contracts similar to this, and that he had for a long time been familiar with the plaintiffs' freighting business ;—that the plaintiffs had never dealt in hay as an article to be freighted, and that hay had been up to that time, an unusual article to be transported in boats on Lake Champlain ;—that the amount of the plaintiffs' freight for several years, prior to 1852, had been from 250 to 400 tons a year, and of a character that could be transported for the prices named in said contract, at a reasonable profit only, and that hay when pressed could not be transported, without loss to the transporter, for less than double those rates. To this evidence the plaintiffs objected, but the referees overruled the objection and admitted the testimony ; and from it they found that neither the plaintiffs or the defendant, in using the words "their freight" or "all freight" or any of the other terms made use of, intended to include hay as an article of freight to be transported under the contract; and decided that the defendant was not bound to transport the hay of the plaintiffs, and disallowed all that part of the plaintiffs' claim that related to said hay or grew out of the defendant's refusal to transport it.

Upon other claims made by the plaintiffs the referees found that they were entitled to recover the sum of $31,07 ; and, if they erred in admitting the evidence offered by the defendant, above referred to they found that the plaintiffs were compelled to pay $2,225.51 more to get their hay transported to New York than they would have had to have paid to the defendant for transporting it under said contract ; and in that case, the plaintiffs would be entitled to recover that sum in addition, together with the interest.    In the county court the plaintiffs excepted to the report on account of the admission of the testimony offered by the defendant—but the county court,

7

November Term, 1854,—PECK, J., presiding,—accepted the report and rendered judgment thereon for the plaintiff to recover the smaller sum reported by the referees. Exceptions by the plaintiffs.

*W. W. Peck* and *E. Harvey*, for the plaintiffs.

A latent ambiguity exists where the instrument reads intelligibly in the first instance, but is susceptible of application to either of several subjects, each of which will fully employ the language ; a patent ambiguity, such as may be removed by extraneous proof, exists where the instrument reads unintelligibly in the first instance by the employment of either general language in a dubious manner, or language possessing distinct general and technical senses, or language which is purely technical. In the one case extraneous proof may be used to explain its limit, being the point at which it begins to contradict, in the other to apply. Hence if neither ambiguity exists, the evidence is inadmissible. If it concurs with the instrument, it is superfluous. If it does not, it contradicts.

Cases occasionally infringe upon this rule in their application ; but the rule itself, all cases admit. 1 Greenl. Ev. § 275, 276, 277, 278, 297, 300. *Stackpole* v. *Arnald,* 11 Mass. 27. Chit. on Cont. 81.

Thus, if an indefinite expression is used which is capable of satisfaction, equally in various ways, evidence is admissible. *Smith* v. *Jersey,* 2 Brod. & Bing. 553. *Colpoys* v. *Colpoys,* 4 Cond. Ch. Rep. 210. 1 Brown Ch. 479. *Hart* v. *Hammett,* 18 Vt. 127. 2 Cow. & Hills Notes, 1408–9. 12 Wend. 753. 4 East. 135.

Again, proof of usage is resorted to for the same purpose, but under the same restrictions, 4 East. 135. 12 Wend. 573. *Linsley* v. *Lovely,* 26 Vt. 123. 2 Sumn. 469–70. *Perisch* v. *Dickson,* 1 Mason, 10–12.

In its first sentence, defendant promises to carry plaintiffs' "freight during the navigable season of 1852," the only limitation to the promise being the season, and, providing the routes, it proceeds as a promise to carry " all the freight" of plaintiffs during the season, negating the idea of any exceptions. In a subsequent part, wool is excepted, except at special rates ; and the expression of one exception excludes the idea of further exceptions. *Rex* v. *Inhabi-*

*tants of Sedgley,* 2 B. & Ad. 65. *Webb* v. *Plummer,* 2 B. & Ald. 750. *Roberts* v. *Barber,* 1 C. & M. 808. Except as above, the instrument omits all specifications of freight.

Pressed hay, as merchandise, that which could properly constitute the cargo, and from the practice then established of carrying it as freight upon this contract route, and adjacent routes, is clearly embraced. The instrument presents no ambiguity, hence no extrinsic evidence to show its application or scope was admissible. The effect of the evidence in question was to limit the express and plain scope of the instrument.

The fact that hay had been rarely freighted on the lake before if it had any weight, should have aided the plaintiffs' claim. If it became freight for the first time upon this route, during the navigable season of 1852, it was within the contract. 1 Greenl. Ev. § 277, 295. *Doe* v. *Martin,* 4 B. & Ad. 785–6. *Doe* v. *Gwillim* 5 B. & Ad. 122–129. *Beaumont* v. *Field,* 2 Chit. 275. 2 Stark. Ev. 566. *Catlin* v. *Smith,* 24 Vt. 87–8. *Colpoys* v. *Colpoys,* 4 Cond. Ch. 210. *Blackett* v. *Royal Ex. Ins. Co.,* 1 Smith, L. C. 413. *Macomber* v. *Parker,* 13 Pick. 176. *Yates* v. *Pym,* 6 Taun. 446.

*D. A. Smalley, B. Rixford,* and *Phelps & Chittenden,* for the defendant.

The referees were right in reciving the parol testimony as set forth in their report.

It was received, not for the purpose of varying or contradicting the written contract, but for the purpose of aiding in its construction and arriving at the real intentions and understanding of the parties, and of applying the written contract to its proper subject matter. And for these purposes, parol testimony is always admissible.

1. Where the terms of the written instrument are clear, and oral evidence is used to point the application to this or that subject matter, the oral evidence does not usurp the authority of the written instrument; it acts in aid of it, that is, it points out the precise object to which the instrument is applicable. 3 Stark. Ev. p. 1000, 1001, 1021, 1020, 1033. *Peisch* v. *Dickson,* 1 Mason, 11.

2. For the purpose of ascertaining the intentions of the parties

in entering into any contract, the court will look at the situation of parties making it, the subject matter of the contract, the object and motive of the parties, and, when the contact is reduced to writing, will allow all these circumstances to be shown by parol. *Lowry et al.* v. *Adams,* 22 Vt. 160. *Hart* v. *Hammett,* 18 Vt. 127. *Bradley* v. *W. A. & G. Steam Co.,* 13 Pet. 89. *Knight* v. *N. E. Worsted Co.,* 2 Cush. 283. *French* v. *Carhart,* 1 Comst. 96.

The opinion of the court was delivered by

ISHAM, J. The questions in this case arise upon exceptions to a report of referees. The plaintiffs seek to recover damages for a refusal by the defendant to transport about seven hundred tons of pressed hay from Burlington and other ports on Lake Champlain, to the city of New York, according to the terms and provisions of of a written contract, made on the 10th of April, 1852. The question arises, whether the referees erred in admitting parol evidence to show that this kind of property was not included in the provisions of that contract. The contract is in these words, " The party " of the first part agrees with the party of the second part to trans- " port in a prompt and business like manner, *their freight* during " the navigable season of 1852, between the places hereinafter " mentioned as follows:—all freight from any port on Lake Cham- " plain to New York at $2.75 per ton." The contract specifies the rate of compensation which was to be paid for transportation to and from the cities of Boston, New York, Albany, and Troy, and concludes with a stipulation on the part of the plaintiffs, to give the defendant their freighting during that season. These are all the provisions of that contract to which reference need be made for the determination of this case. The request of the plaintiffs, and the refusal by the defendant to transport the hay at the rate per ton as specified in that contract, is found and stated in the report.

It is insisted, that the contract and tariff of freight has no reference to property of this character, and that the parties in the use of the words " their freight" had reference to other articles of personal property for which those rates of compensation were fixed. For the purpose, therefore, of determining what was meant by the parties in the use of those words, and to ascertain the kind of property to which they referred, parol evidence was offered by the defendant

and admitted by the referees, from which, the fact was proved and found, that this kind of property was not intended by the parties to be included in that contract, and that the defendant was under no obligation to transport that hay at the prices mentioned in that agreement. The fact so found is conclusive in the case, provided that testimony was admisible.

As a general rule, parol testimony cannot be received to add to, vary, or contradict the terms of a written contract. No evidence can be received which gives to a party the use of other language than that which he has employed. If the words of a contract are clear, and unequivocal, if they import a legal obligation, and there is no uncertainty as to the *object or extent* of the contract, these words are not to be controverted by the introduction of parol evidence. Under such circumstances, no other words are to be added or substituted for them. Phil. & Am. on Ev. 753. 1 Greenl. Ev. § 275. But whenever any ambiguity arises from extrinsic matters, or when from the language used, the *object* or *extent* of the contract cannot be determined, parol evidence is admissible to remove that ambiguity, and ascertain the object upon which the contract was designed to operate. It is a mere rule of interpretation, to find out the meaning of the written words as the parties used them. The difficulty in all cases of this character lies in the application of these general principles.

The word " freight" is a general term, and as used by these parties, has reference to the property or articles to be transported. It embraces every article of personal property which is capable of transportation, whether it is live stock, or merchandise, and whether it is bulky or compact; they may be dangerous articles for transportation and require extraordinary care as a matter of safety, or they may be free from such danger and require but little care in the course of their transit. It will include property ordinarily transported by measurement, as well as that usually carried by weight. These are all circumstances which are properly and usually taken into consideration, in ascertaining the rate of compensation.

If a carrier has *made provision for transporting common merchandise simply*, and agrees to carry *all the freight* of another for a given period, and for a given price, it cannot reasonably be

claimed that, on a request for that purpose, that contract would bind the carrier to transport live stock, or any property of extraordinary hazard. In such case, there can be no doubt that parol evidence is admissible to show what species of property was meant in the use of that language: in the words as given in Greenl. Ev. § 277, "the contract may be read by the light of surrounding circum- "stances, in order, more perfectly to understand the intent and "meaning of the parties." The testimony is admissible as explaining the object on which the parties intended the contract should operate and be rendered effectual. Upon that principle, we think, the testimony was properly received by the referees.

In Greenl. Ev. §288 the rule is given, "that if the language of "the instrument is applicable to several persons, or to several "species of goods, and if the words be general and have divers "meanings, parol evidence is admissible of *any extrinsic circum-* "*stances* tending to show what person, or *what things* were intended "by the party," and the word "freight," among others, is particularly mentioned as falling within that rule. The adjudged cases fully sustain that rule. 3 Phil. Ev. 1406. *Peisch* v. *Dickson*, 1 Mason, 10, 12. *Taylor* v. *Briggs*, 2 Car. & P. 525. *Birch* v. *Depeyster*, 4 Camp. 385. 1 Stark. 210. *U. States* v. *Breed*, 1 Sumner, 159. *Bradley* v. *Washington Steam Co.* 13 Pet. 89. *Fish* v. *Hubbard*, 21 Wend. 652. *Grant* v. *Maddox*, 15 M. & W. 736. The case of *Putnam* v. *Smith*, 4 Vt. 622 is an illustration of this principle. In that case land had been conveyed, reserving all *the free stone on the land*, with the privilege of carrying it off. It was held that parol evidence was admissible to show the situation and quantity of stone on the surface, and that the ledge was not then known to the parties. The testimony was admitted to designate what property in particular, the parties intended the contract should, or should not affect.

It must be confessed that in the application of this rule, cases exist, which are difficult to reconcile. But as to the correctness of the principle, the authorities are quite uniform; and of its proper application to this case, we have no doubt. In ascertaining the meaning of the parties in the use of the words " their freight'" the court "should be placed, in regard to the surrounding circumstances, "as nearly as possible in the situation of the party whose written

"language is to be intrepreted." For that purpose, the evidence offered was admissible, showing the nature, character and extent of the plaintiffs' freighting for several years previous to this contract; that the defendant in those years had done the plaintiffs' transportation under similar contracts and that the defendant was familiar with the plaintiffs' business, and the kind of property he had had transported. All these circumstances had a tendency to designate the character of the freight, for the transportation of which, the parties were contracting, and to explain their meaning in the use of that language in their contract. The exception of wool, as made in the contract shows that the parties did not intend that articles of a bulky character were to be transported, at the rates mentioned in the contract for freight.

The judgment of the county court must be affirmed.