HON. JAMES BARRETT,
HON. HOYT H. WHEELER,
HON. HOMER E. ROYCE,
HON. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.
HON. JONATHAN ROSS,
HON. H. HENRY POWERS,

---

### ALGER v. KENNEDY.

*Landlord and Tenant. Construction of Lease. Right of Lessor to Rent after Eviction. Evidence.*

In assumpsit for rent, it appeared that the demised premises were described in the lease as "the premises on the corner of College street and Center street recently occupied by E. Laporte as a French hotel. (The joiners' shops are not included; but when vacated, Kennedy is to have right to either or both at same rent they now draw, payable quarterly in advance) $75 and $112 respectively." Notice of special matter under the general issue alleged eviction through plaintiff's neglect properly to drain a cellar under the premises, not included in the lease, whereby the premises were rendered unfit for occupation. In support of the notice, defendant sought to show by parol that the cellar was not occupied by Laporte, and the evidence so offered was admitted, with evidence in rebuttal tending to show that it was occupied

by him. *Held*, that the words, "recently occupied by E. Laporte as a French hotel," were restrictive of the grant; that the exception of the joiners' shops did not indicate an intention to pass all else on that corner owned by plaintiff; that the evidence was properly admitted; and that the question of whether or not Laporte occupied the cellar was properly submitted to the jury.

The lease provided that defendant should put and keep the place in repair. The court, in charging the jury, after putting several questions to illustrate the meaning of the phrase, "in repair," said that if the cellar was included in the lease, the fault was the defendant's if the cellar was not taken care of, provided they found that to drain it was a necessary repair. *Held*, that the question of whether or not the cellar was in repair was thus submitted to the jury, and that to submit it to them was erroneous.

Any default, as well as any overt act of the lessor, that renders the tenement dangerous to the life or health of the tenant, may be treated by the lessee as an eviction. Thus, it was *held*, that evidence of the lessor's neglect to drain the cellar was admissible.

If the lessor unlawfully evict the lessee his right to rent thereupon ceases.

ASSUMPSIT for rent reserved. Plea, the general issue, with notice of special matter, trial by jury, April Term, 1875, Chittenden County, PIERPOINT, C. J., presiding, and verdict for the plaintiff.

The lease, dated November 30, 1872, described the premises as " the premises on the corner of College street and Center street recently occupied by E. Laporte as a French hotel. (The joiner's shops are not included, but when vacated Kennedy is to have right to either or both at same rent they now draw, payable quarterly in advance) $75 and $112 respectively," and contained a covenant on the part of the defendant to put and keep " the place " in repair, at his own expense, and leave it at the end of the term in as good repair as it was at the beginning, and to occupy the premises " for the purpose of a boarding house and hotel " only. The notice of special matter alleged, that at the time the lease was executed, there was under the building an undrained subcellar, not covered by the lease, containing water and filth that rendered the building unfit and unsafe for occupation as a dwelling-house; that the plaintiff said nothing at the time the lease was executed about the existence of said sub-cellar, and that, as it was concealed by the basement floor, the defendant knew nothing about it until after he went into possession, when, in fixing the water pipes, he discovered it, and informed the plaintiff of its condition, which the plaintiff promised to, but did not, repair; that

the defendant continued in possession until the following spring, when the noxious and poisonous exhalation from said cellar rendered the building unfit and unsafe for occupation as a dwelling; that the defendant then, and several times afterwards, requested the plaintiff to put the cellar in proper condition, which the plaintiff as often promised, but neglected to do; that early in August, the defendant told the plaintiff that he should pay no more rent until the cellar was properly cleaned, and that he should be compelled to give up possession if it was not done; and that on October 7, about seven months before the expiration of the term, the cellar still continuing in such condition that the building could not safely be used as a dwelling-house, the defendant was obliged to and did vacate the premises.

The plaintiff introduced the lease in evidence, and also evidence tending to show that the defendant took possession under it, and that at the time suit was brought, rent for two quarters was in arrear.

The defendant then offered evidence tending to support the allegations of his notice, to the admission of which the plaintiff objected, for that it contradicted the terms of the lease, and if true, did not show an eviction; but it was admitted; to which the plaintiff excepted.

The plaintiff's further testimony tended to show that the sub-cellar was included in the demised premises; that it was occupied to some extent by Laporte; that he notified the defendant when the lease was executed that the cellar was not good for much, and had been previously filled with water by the stoppage of a drain; that when the defendant notified him in the spring that it was filled with water, he caused it to be drained and put in proper condition, and that when he was first informed that the defendant had abandoned the premises, the cellar was dry and in good condition. But the defendant's testimony tended to show the contrary, except as to the inclusion of the cellar in the demised premises, and its occupation by Laporte, which there was no evidence to contradict. It appeared that the joiner's shops did not include the sub-cellar, and that the joiners did not occupy it; that there was a boarded stairway from the part occupied by the defendant

down through the story occupied by the joiners, to the sub-cellar, which the defendant occupied, and that, as the defendant's testi· mony tended to show, it was boarded over at the point where it passed through the floor above the cellar, at the time the defendant took possession. The defendant's testimony further tended to show, that he did not use the sub-cellar except to repair the water pipes, as alleged in the notice.

The plaintiff requested the court to direct a verdict for the amount of rent in arrear ; but the court refused, to which the plaintiff excepted. The plaintiff requested the court to charge that, as the rent was payable quarterly in advance, and as the defendant occupied past the time fixed in the lease for payment, he would be liable for the quarter's rent accruing at the time he abandoned the premises ; but the court refused so to charge, and charged that as the lessor was bound to see that the premises were in such condition, so far as their condition depended on that of any part of the premises over which he had control, as to be reasonably safe for occupation,—as not to endanger the health or lives of the tenants during the term, and as the lease was not so explicit as exactly to identify the premises, the jury were in the first place to determine whether the sub-cellar was embraced in the lease, and that that was to be determined in part by the evidence as to what was leased to and occupied by Laporte ; that if it was embraced in the lease, the defendant was in possession of it, whether he used it or knew of its existence, or not ; and that if he was in possession of it, he was, by the terms of the lease, bound to keep it in repair. As to what would constitute repair, the court charged in substance as follows : .

At the time the defendant took the premises, was the cellar in repair ? Was it in repair with reference to the whole place ?— not necessarily with reference to the cellar itself. The cellar might not have been of any use. The plaintiff says he told the defendant there was a cellar there, but that it was not good for anything. Was the cellar in repair with reference to the whole premises covered by the lease ? For the purpose of remaining there without being used, being good for nothing for use, the cellar, as such, may not have required repair. That is, the cellar may not have required repair for the purposes of the cellar itself.

But in order to put the whole premises in a state of repair, it might have been necessary to repair the cellar. For instance, is a dwelling-house in a good state of repair, the cellar of which is in such a condition that the rooms above it are not in a suitable condition to be inhabited with reference to a person's health? A cellar is a part of the premises. But would premises be in suitable repair with a cellar in the condition that I have named? Whether this cellar was to be used or not, whether it was good for anything or not, was the place in repair with such a cellar under it? Take the common case of a cellar under a house with the drain stopped up, and the cellar half full of water. Now, speaking with reference to the cellar itself, is the house in repair with the cellar in that condition? Perhaps there might be difference of opinion, but I hardly think so. I should hardly think that such a place was in repair, but that a man under obligation to keep it in repair would be bound to see that the water was carried out, and that the place was not in suitable repair until that was done. In this case, if the cellar was in the condition represented, could the defendant put the premises in repair—put the cellar in such a condition that the rooms above could be safely inhabited—without opening the drain and letting off the water? If it was for the defendant to repair and take care of it, there would seem to be nothing in the case of which he would have a right to complain. The fault is his own, if it was not repaired and taken care of, provided you find that to have cleared out that drain would have been a repair that would be necessary.

To the refusal to charge as requested, and to the charge as given, the plaintiff excepted.

*H. H. Talcott* ( *C. J. Alger* and *L. L. Lawrence* with him), for the plaintiff.

The evidence of the defendant should have been excluded. It contradicted the terms of the lease. The clause, " recently occupied by E. Laporte as a French hotel," should not be construed as limiting the premises leased to what was actually occupied by Laporte. It is the same as " meaning the French hotel premises " —or, the common phrase, " the premises now occupied by us as a homestead," in a deed where the premises are described by metes and bounds. The error of the court consisted in interpreting that clause as limiting the premises leased, to the rooms occupied by Laporte. The phrase, " reserving the rooms occupied by the

joiners during the time of their lease," as well as the clause, " that he will put *the place* in repair at his own expense, and keep it in repair at his own expense," show that such is not the meaning of the language used.

The evidence offered did not tend to show an eviction of the defendant by the plaintiff. Nothing was done by the plaintiff to cause the trouble complained of. The whole trouble was there when the defendant rented and took possession of the premises. " There must be an actual entry and expulsion of the tenant by the landlord, or some deliberate disturbance of the possession, depriving the tenant of the beneficial enjoyment of the demised premises, to operate a suspension or extinguishment of the rent." NELSON, C. J., in *Ogilvie* v. *Hull*, 5 Hill, 51 ; *Cleves* v. *Willoughby*, 7 Hill, 86 ; *Westlake* v. *DeGraw*, 25 Wend. 669 ; *Deyett* v. *Pendleton* 8 Cow. 727 ; *Gilhooly* v. *Washington*, 4 Comst. 217 ; *Hazlett* v. *Powell*, 30 Pa. 297 ; *Etheridge* v. *Osborn*, 12 Wend. 531 ; *Allen* v. *Pell*, 4 Wend. 506 ; *Kramer* v. *Cook*, 7 Gray, 550.

The requests of the plaintiff should have been granted. By the terms of the lease, two quarters rent became due before the suit was brought.

The rent was payable quarterly in advance. The defendant occupied the premises at the time the first quarter's rent fell due, and occupied for a considerable portion of the quarter. An action was maintainable for the quarter's rent, on the first day of the quarter.

The court erred in assuming that there was an implied warranty on the part of the landlord that the premises were in good condition. *Mumford* v. *Brown*, 6 Cow. 476 ; *Cleves* v. *Willoughby*, *supra* ; *Hazlett* v. *Powell*, *supra* ; *Izon* v. *Gorton*, 5 Bing. N. C. 501 ; *Westlake* v. *De Graw*, *supra* ; *Kramer* v. *Cook*, 7 Gray, 550 ; *Jaques* v. *Gould*, 4 Cush. 384 ; 3 Kent Com. 628.

Whether or not the cellar was covered by the lease, was a question for the court, and should not have been submitted to the jury. HEBARD, J., in *Woson* v. *Rowe*, 16 Vt. 528 ; 2 Parsons Cont. 4.

It was error to leave it to the jury to find the meaning of the words, " that he will put the place in repair at his own expense, and keep it in repair at his own expense."

*Henry Ballard* (*Seneca Haselton* with him), for the defendant.

I. The refusal to charge as requested, and the charge as given upon the subject-matter of the request, were correct. There was evidence tending to show that the sub-cellar formed a part of the premises, and also to show that it did not. The charge as to the plaintiff's duty to keep the cellar in such condition that the building could be safely inhabited, was correct. It is settled that in an action for use and occupation, if the tenant has been deprived of the beneficial enjoyment of the property by the act or neglect of the landlord, he is not bound to pay rent. *Howard* v. *Ransom*, 2 Aik. 252 ; *Deyett* v. *Pendleton*, 8 Cow. 727 ; *Cowie* v. *Goodwin*, 9 C. & P. 378 ; *Collins* v. *Barrow*, 1 M. & R. 112 ; *Salisbury* v. *Marshall*, 4 C. & P. 65 ; *Gilhooley* v. *Washington*, 4 N. Y. 217 ; *Smith* v. *Marable*, 11 M. & W. 5 ; *Edgerton* v. *Page*, 20 N. Y. 281.

Some cases hold that the tenant is not liable to pay rent after the time when the act or neglect of the landlord renders the premises unfit for occupation, even though the tenant does not cease to occupy at that time. *Cowie* v. *Goodwin*, 9 C. & P. 378 ; *Edwards* v. *Hetherington*, 7 D. & R. 117 ; *Cæsar* v. *Kurtz*, 60 N. Y. 229.

Such being the law, the evidence tending to show that the premises were unsafe and dangerous to occupy, and that they were made so by the act and neglect of the plaintiff, was properly admitted, and the refusal of the court to direct a verdict for the plaintiff was proper.

II. The charge of the court was correct in submitting the question to the jury as to whether or not the sub-cellar was a part of the premises included in the lease, as that was a question of fact, not to be determined by the court as a matter of law, from an inspection of the lease itself. It is settled that parol evidence is admissible to show the application of a written instrument to the subject-matter of it. It must be received to show what it is that corresponds with the description contained in it. Broom Leg. Max. 393 ; *Stoops* v. *Smith*, 1 Am. Rep. 85 ; *Sweat* v. *Shumway*, 3 Am. Rep. 471 ; *Doe* v. *Burt*, 1 T. R. *702 ; *Sargeant* v. *Adams*, 3 Gray, 72 ; *Mitchell & Turner* v. *Stevens*, 1 Aik. 16 ; *Putnam* v.

*Smith*, 4 Vt. 622 ; *Patch* v. *Keeler*, 28 Vt. 332 ; *Magoon* v. *Harris*, 46 Vt. 264. " Parcel or not parcel of the thing demised is always matter of evidence." Met. Cont. 293.

The opinion of the court was delivered by

Ross, J.   The defendant's notice, in substance, avers, that the lease did not include the sub-cellar, and that the plaintiff, though frequently notified, allowed the sub-cellar to be and remain in such a condition through want of proper drainage, that the whole tenement was rendered unhealthy, unsafe, and unfit for occupation, and that therefore the defendant lawfully abandoned it before the expiration of the time limited in the lease.   The plaintiff excepted to the admission of testimony in support of the notice, on the grounds that it would contradict the lease, and, if established, would not amount to an eviction.

The description in the lease of the grant, is, " The premises on the corner of College street and Center street recently occupied by E. Laporte as a French hotel.   (The joiners' shops are not included, but when vacated, Kennedy is to have right to either or both at same rent they now draw, payable quarterly in advance) $75 and $112 respectively."   It is a well-recognized rule, that the language of a grant shall be so construed that " every word (if it may be) may take effect, and none be rejected."   1 Shep. Touch. 87.   Again, a particular description, following closely in the same sentence and clause words of general description, is to be construed as a restriction or limitation of the general description.   " If one grant his manor of Dale, in Dale, which in truth doth extend in Dale and Sale ; in this case no part of the manor that doth lie in Sale shall pass.   So, if the manor lie within the parishes A, B and C, and the grant is of the manor of Dale, lying within the parishes A and B, by this grant no part of the manor lying in C will pass."   " If one grant all his lands in B and elsewhere in the county of S, in the tenure of J. S., by this grant nothing doth pass but that which is in the tenure of J. S."   1 Shep. Touch. 99.   The clause, " Which were lately in the occupation of A. B.," following a general description, is a restriction only where the clause is general, and is all but one and the same sen-

tence, and not ended as certain before the end of the sentence." *Swift et al.* v. *Eyres*, Cro. Car. 548.

Where a grant is in general terms, the addition of a particular circumstance will operate by way of restriction or modification of such grant. *Roe d. Conolly* v. *Vernon and Vyse*, 5 East. 51; *Tenney* v. *Beard*, 5 N. H. 58; *Barnard* v. *Martin*, Ib. 536; *Woodman* v. *Lane*, 7 N. H. 241; *Flagg* v. *Bean*, 25 N. H. 49; *Bell* v. *Sawyer*, 32 N. H. 72; *Nutting* v. *Herbert*, 35 N. H. 125.

The grant of " the premises on the corner of College street and Center street " is very general. The technical legal meaning of premises, when used in connection with a grant, includes all that part of the deed which precedes the *habendum*. 1 Shep. Touch. 75; *Brown* v. *Manter*, 21 N. H. 528; 2 Washb. Real Prop. 612. It is sometimes taken for the thing demised or granted by the deed. 1 Shep. Touch. 75. It is evidently used in the lease in the latter signification, and in this signification is a word applicable alike to a manor, a farm, a building, or a tenement of one or two rooms in a building. In and of itself, it defines nothing, but must be aided by other words giving definiteness of description to the thing granted. The words " on the corner of College street and Center street," locate the grant, but do not limit or define it. The words which closely follow, without the intervention of a comma even, " recently occupied by E. Laporte as a French hotel," are not repugnant to what has preceded, but give definiteness and set limits to what has before been indefinitely and generally described as " the premises." Under the rules and decisions already stated, we think these latter words are restrictive, and limit the grant. Whether such language is to be construed as restrictive of what has preceded, depends more upon the connection and manner in which it is used, than upon the exact language used. When following a definite description, or when repugnant to a preceding description, or when manifestly added by way of further description, different rules of construction, and different considerations control the effect to be given them. *Doe* v. *Burt*, 1 T. R. 701; *Sargent* v. *Adams*, 3 Gray, 72; *Mitchell et al.* v. *Stevens*, 1 Aik. 16; *Putnam* v. *Smith*, 4 Vt. 622; *Hibbard* v. *Hurlburt*, 10 Vt. 173.

The plaintiff insists that the exception of the joiner's shop, which follows in a separate sentence, shows that all the plaintiff owned at the corner of the streets named, was intended to pass by the lease. But that does not follow. A similar exception was claimed to control in *Doe* v. *Burt*, but the court refused to give it such significance. Besides, it was necessary to mention the joiner's shops, inasmuch as they were to pass by the lease, when the then tenancy expired, if the defendant so elected. The County Court, therefore, correctly construed the language of the lease, and properly admitted parol testimony to show what Laporte occupied as a French hotel. That was a question of fact, to be determined by the jury on the evidence, as much as are the boundaries, extent, or identification of any grant. The language of the lease is clear and plain on the face of it. When doubts arise in applying the language to the thing granted, extrinsic or parol evidence is admissible to resolve the doubts. *Putnam* v. *Smith*, 4 Vt. 622. As there was testimony tending to show that the sub-cellar was not occupied by Laporte under his lease, as well as tending to show that he occupied it somewhat, the County Court properly submitted that question to the determination of the jury.

II.   But it is insisted that if the sub-cellar was not included in the lease, the plaintiff's *suffering* it to remain in the condition that the defendant's evidence tended to establish, did not create an eviction; that to work an eviction, the plaintiff must do some *positive overt act*, and not merely neglect to do some act that he was in duty bound to perform. We do not think this position tenable. A careful reading of the authorities relied on by the plaintiff shows that any act or *default* of the lessor that renders the tenement such as endangers the life or health of the occucupants, may be treated by the lessee as an eviction, and give him the right to abandon the premises, and terminate his obligation to pay rent. If the sub-cellar was in the control of the plaintiff, it was his duty so to keep it that its condition would not render the tenement leased to the defendant unsafe for occupation. His default in the discharge of his duty in this respect, would be as injurious to the defendant as if he deposited the offensive matter

in the sub-cellar. If A rents to B the second story of a house for a term of years, he cannot suffer, through neglect to repair, the first story to become ruinous, so that the house is liable to fall and kill B and his family, and still hold B bound to occupy and pay rent. There is no legal difference between such a default and tearing down the first story. We think the attempted distinction is without a legal difference, and that the County Court correctly admitted the evidence under the notice.

III. The plaintiff's requests were properly refused. If the plaintiff's default in repairing and cleansing the sub-cellar gave the defendant the right to abandon the premises, he was thereby discharged from the obligation to pay rent. The right to collect rent is concurrent with the lessee's right and duty to occupy the leased premises. When the lessee lawfully ceases to occupy, he is discharged from his obligation to pay accruing rent. This is so, whether the rent is payable in advance or at the end of the term. If, having received the rent, the lessor unlawfully evict the lessee, by such eviction he becomes liable to pay back at least so much of the rent received as answers to the time for that he has wrongfully deprived the lessee of the occupation of the premises.

IV. The plaintiff excepted to the charge of the court, and claims that the court erred in submitting to the jury to determine whether, if the sub-cellar was included in the lease, it was the duty of the defendant, under the stipulation to repair and keep the premises in repair, to have put the sub-cellar in a suitable and healthy condition. The defendant claims that what was said by the court in the charge on this point, was by way of argument and illustration, instead of submitting to the jury the determination of the fact of whether what was required to be done to the sub-cellar was a repair within the stipulation in the lease. We think a fair construction of the charge is as claimed by the plaintiff. In addition to repeatedly asking the question in different forms, whether the place can be considered in repair which has a cellar in such a condition under it, in restating the questions, the

court tells the jury, " the fault is his [defendant's] own if it was not repaired and taken care of, provided you find that to have cleared out that drain would have been a repair that would have been necessary." In this we think there was error. If the sub-cellar was included in the lease, it was the duty of the defendant to have put and kept it in good repair. If it was in such a condition that it rendered the whole tenement unfit and unsafe for occupation, there is no question but it needed repairing, and the jury should have been told so. A cellar partly filled with water, month after month, because the drain has become stopped up, is out of repair. As by the terms of the lease the defendant was under obligation to put and keep the premises in repair, if the sub-cellar was included in the lease, the defendant was estopped from complaining of the stoppage of the drain. It was his duty to have unstopped it, and so to have removed the cause which he claims rendered the rooms unfit for occupation. Under the charge, the jury may possibly have found, that the sub-cellar was included in the lease, but that the unstopping of the drain was not a repair that the defendant was obligated by the lease to make; so that notwithstanding he was in the control and occupancy of the sub-cellar, and bound to keep the premises in repair, yet he had good cause for abandoning the premises. From the case as developed in the exceptions, we can hardly believe that the jury turned the decision upon this ground; but as they may have done so, and as we think there was error in the charge in this one particular, the judgment is reversed, and cause remanded.