## CONSTRUCTION OF AN INSURANCE POLICY OF THE FLOATING TYPE.

Circuit Court of Cuyahoga County.

### THE GLOBE-RUTGERS FIRE INSURANCE COMPANY v. THE SHERWIN-WILLIAMS COMPANY.[*]

Decided, December, 1913.

*Insurance—Policy to be Construed Liberally in Favor of Insured—Parol Evidence Admissible to Show Nature of Property and Situation and Relation of Parties.*

1. Where two interpretations, each equally fair, may be given to the language used in an insurance policy, that which will give the greater indemnity to the insured must prevail.
2. Where the meaning of an insurance contract is doubtful, or capable of two meanings, parol evidence is admissible in the construction of the contract to show the nature and qualities of the subject-matter, the situation and relation of the parties, and all the surrounding circumstances, to aid the court in applying the language of the contract to the subject-matter.
3. Where a fire insurance policy of the floating type covered all merchandise of the assured "situated anywhere in the United States except while on premises occupied by the assured for manufacturing purposes"; *Held:*  That the exception applied only to places where the actual work of manufacture was carried on and did not include raw materials stored in a building adjacent to, but separate from a manufacturing plant of the assured.

*White, Johnson & Cannon,* for plaintiff in error.
*Squire, Sanders & Dempsey,* contra.

MEALS, J.; WINCH, J., and MARVIN, J., concur.

This is an action to recover a fire loss and is founded upon a policy which insured "all buildings belonging to the assured, and all merchandise, consisting principally of paints, oils, varnishes, painters' supplies, including packages of and containing the same, empty and filled packages situated anywhere in the United

---

[*]Dismissed in the Supreme Court by consent of parties at the costs of the plaintiff in error.

States, except San Francisco and *while on premises occupied by the assured for manufacturing purposes.*

The assured, the Sherwin-Williams Company, owned and occupied a building on Merwin street, in Cleveland, which it used for the manufacture of paints. Adjacent thereto, but unconnected therewith, stood another building, the basement and first floor of which the assured leased and used as a storage house for pigments or materials, used by it in the manufacture of its various products in the adjoining and other buildings. The material so stored was destroyed by fire, and this action is prosecuted against the assurer, the Globe-Rutgers Fire Insurance Company, to recover for the loss. The principal question raised by the record is whether the property so destroyed is covered by the policy.

The answer to this question depends principally upon the construction given the words of the policy, "while on premises occupied by the assured for manufacturing purposes." Two questions, therefore, naturally arise out of this situation:

*First.* Was the property destroyed specifically covered by the policy; or, conversely, was it specifically excluded from the operation of the policy; and, *secondly,* Was parole evidence admissible for the purpose of showing the sense in which this provision of the policy was used by the parties?

In ascertaining the meaning of a policy of insurance, like any other contract, the language of the policy must first be regarded, and if it definitely fixes the location of the risk, the policy does not attach if the property is destroyed outside of the locality designated. The rule is that the language of the policy is first to be looked to and if by the well settled rule of construction the language is plain and unambiguous and the intention of the parties, as derived therefrom, is clear, it must control and extrinsic evidence is not admissible to affect its construction. *Wood on Insurance,* 122.

So, when the policy is specific as to the subject-matter of the risk, it can not be extended by implication, nor is evidence admissible to show that the parties intended to have it cover matters not specified or matters excluded. *Wood on Insurance,* 137.

It, however, is an invariable rule of construction and especially applicable to the construction of policies of insurance, that that construction should be taken which is most beneficial to the promisee.

"No rule," says Mr. Wood in Volume 1 of his work on insurance, at page 145, "in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim to the indemnity, which, in taking the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted. Indemnity is the real object and purpose of all insurance; that is what the insured bargains for and what the assurer intends to provide. The predominant intention of the parties in a contract of insurance is indemnity, and this is to be kept in view and favored in putting a construction upon the policy. Having indemnity for its object, the contract is to be construed liberally and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give. The spirit of the rule is that when two interpretations, equally fair, may be given, that which gives the greater indemnity shall prevail."

This doctrine is fully supported by the decisions of the Supreme Court of this state, as shown by the following cases: *Germania Life Ins. Co.* v. *Schild*, 69 O. S., 136; *Trustees* v. *Deposit Co.*, 76 O. S., 253; *Bryant* v. *American Bonding Co.*, 77 O. S., 99.

So where there are no ambiguities or uncertainties and no conflicting inferences to be drawn from the language of the policy, the construction is a question of law for the court. But no rule is better settled than that when the meaning of an insurance contract is doubtful, or capable of two meanings, parole evidence is admissible in the construction of the contract to define the nature and qualities of the subject-matter, the situation and relation of the parties and all the surrounding circumstances, in order that the court may put themselves in the place of the parties, see how the terms of the instrument affect the subject-matter, and

ascertain the signification which ought to be given to any phrase in the contract which is ambiguous or susceptible of more than one interpretation; and this, although the result of the evidence may be to contradict the usual meaning of terms and phrases used in the contract.

Illustrative of this doctrine, attention is called to the case of *Bradley* v. *The Washington, etc., Steam Packet Co.*, 13 Peters, 89. This was an action on the case by the defendant in error to recover for hire of the steamboat Franklin. The agreement of hiring grew out of the following paper:

"I agree to hire the steamboat Franklin until the steamboat Sidney is placed on the route, to commence tomorrow, 20th inst., at $35 per day clear of all expenses other than the wages of Captain Nevitt.

"W. A. Bradley.

"19 Nov., 1831."

and a written acceptance of the same signed by the president of the company.

The question was whether the plaintiff in error was bound to pay for the use of the Franklin during the term when the navigation of the Potomac was prevented by ice. Parole evidence was offered on his part and excluded and the defendant in error had judgment for the use of the boat during that period. The court reversed the judgment for this error and observed:

"Without attempting to do what others have said they were unable to accomplish, that is, to reconcile all the decisions on the subject, we think that we may lay down this principle as the just result: that in giving effect to a written contract by applying it to its proper subject-matter, extrinsic evidence may be admitted to prove the circumstances under which it was made, whenever, without the aid of such evidence, such application could not be made in the particular case.

"With this principle in view, we proceed to inquire whether the evidence offered by the defendant in this case ought to have been received by the court.

"Now, had the evidence been received, it would have disclosed the following state of facts: that the route mentioned in the contract was one on which the plaintiff in error transported passengers and also the mail; that the steamboat Sidney men-

tioned in the contract was designed to perform this service, and that the Franklin was wanted for the same purpose; that the Sidney was then at Baltimore for the purpose of being fitted with her engines and equipment; that although the transportation of passengers and the mail was carried on by the plaintiff in error in a steamboat whilst the river was open, yet when the river was closed by ice so that navigation was obstructed, the plaintiff in error then transported passengers and the mail one way overland to Fredericksburg; that when the river was thus obstructed, the plaintiff in error could not and did not use a steamboat and that all these facts were known to the defendant in error.''

We think that this evidence ought to have been received because it would have tended to show, by the circumstances under which the contract was made, what was the intention of the parties, and in the language of the rule which we have laid down, that the contract, without this aid, could not be applied to its proper subject-matter.

Chief Justice Shaw, in *Knight* v. *Worsted Co.*, 2 Cushing, 271, observes:

''In expounding a written contract, although parol evidence is not admissible to prove that other terms were agreed to which are not expressed in the writing, or that the parties had other intentions than those to be inferred from it, yet it is competent to offer parole evidence to prove facts and circumstances respecting the parties, the nature, quality and condition of the real and personal property which constitute the subject-matter respecting which it is made.''

In *Noyes* v. *Canfield*, 27 Vt., 79, it appeared that the defendant had entered into a written agreement to transport the plaintiff's freight during the navigable season at a fixed price per ton. For the purpose of showing the meaning of this expression, as used by the parties, and that it was not intended to include hay, parol evidence was admitted to show the kind of property intended to be covered by the contract.

In another case a servant brought an action against his master for wrongful dismissal. The agreement of hiring was in writing. The defendant dismissed the plaintiff because he refused to fold lace on cards, as desired. The plaintiff offered to show by parole

that he was hired in the capacity of lace buyer, and that his refusal was therefore justifiable. The evidence was admitted, the writing being silent as to the capacity in which the servant was hired.

In *Tuttle* v. *Burgett's Admr.*, 53 O. S., 508, our own Supreme Court observed:

"There can be no doubt that in giving construction to a written instrument, regard may be had to the situation of the parties and the surrounding circumstances, and this may be shown by parol to enable the court, called on to interpret the instrument, the better to understand its terms and arrive at the intention of the parties, when not clearly expressed."

These and many other cases substantiate and illustrate the rule that conversations and acts of the parties to a contract at and about the time of the making of the contract are admissible in evidence to show what sense the parties attached to any term or phrase used in the contract, which is in itself susceptible of more than one interpretation, or which, viewed in the light of the evidence explanatory of the subject-matter, the relation of the parties and the surrounding circumstances may reasonably be susceptible of more than one interpretation.

Further, in interpreting the provisions of a contract the meaning of which is doubtful, or which admit of two meanings, it is said in the case of *The Manhattan Life Insurance Co.* v. *Wright*, 126 Fed. Rep., 82, that the "practical interpretation given to their contracts by the parties to them while they are engaged in their performance and before any controversy has arisen concerning them, is one of the best indications of their true intent. The courts that adopt and enforce such a construction are not likely to commit serious error." And the doctrine of this case is amply supported by the authorities in Ohio. *Mosier* v. *Parry,* 60 O. S., 388, 389, *Kling, Admr.,* v. *Bordner,* 65 O. S., 103; *Kinney, Assignee,* v. *Commissioners,* 8 O. C. C., 433; *M. E. Church* v. *Water Co.,* 20 O. C. C., 578; *Braddock* v. *Boner,* 29 O. C. C., 300.

The policy on which this action is founded was of the floating type and was intended to cover the warehouses and their contents, of the assured, wherever located in the United States and Canada,

San Francisco excepted, and sought to exclude from the operation of the policy property on premises occupied by the assured for manufacturing purposes. The parties therefore obviously intended to include within the meaning of the policy certain property, and to exclude other property. The property they sought to exclude was property located on "premises occupied by the assured for manufacturing purposes," presumably because of the more hazardous risk thereby assumed.

Was property stored as this property was stored, on "premises occupied by the assured for manufacturing purposes" within the meaning of the terms of the policy? If so, it is difficult to see how the policy covered any property at all. Ordinarily the phrase "premises occupied by the assured for manufacturing purposes," would include not only the premises where the actual work of manufacture is carried on, but it would include the place where the raw material used in the manufacture is stored, and the "usual and necessary appliances for storing, measuring, weighing, packing and delivering the manufactured article after the process of manufacture is completed." *Memphis Gas Light Co.* v. *State,* 46 Tenn., 310.

If this meaning were to be given to the phrase "while on premises occupied by the assured for manufacturing purposes" as used in this policy, it would exclude from the operation of the policy all property stored in the warehouses of the assured, and clearly this policy was intended to cover such risk.

Manifestly this was not the intention of the parties. What, then, was the intention of the parties, and what property was intended to be covered by the policy?

The language of the policy in this regard is obviously ambiguous, at least it is reasonably susceptible of more than one interpretation. A strict construction of its terms would doubtless exclude the operation of the policy from the property which the parties themselves intended that it should cover. Where, then, shall we look to ascertain the intention of the parties? Under the rules of law above stated, it is proper that we should look for that intention and the sense in which the language of the policy was used by the parties, to the conversations and acts of the parties to the contract at or about the time of the making of

the contract, to the interpretation given the terms of the contract by the parties themselves before any controversy had arisen over it, the subject-matter of the contract, the relation of the parties and the circumstances surrounding the making of the contract.

We are of the opinion, therefore, that the trial court properly admitted evidence tending to show these facts, and that in doing so, no error was committed.

We find nothing in the record which, in our opinion, would justify the disturbance of the judgment of the court below, and the same is therefore affirmed.