## DEXTER v. KING.

*(City Court of Brooklyn, General Term.  January 27, 1890.)*

1. LANDLORD AND TENANT—RENT—UNTENANTABLE PREMISES.
Laws N. Y. 1860, c. 345, relieving a tenant from the payment of rent of a building which, without fault on his part, shall have been destroyed or so injured by the elements or other cause as to be untenantable, does not relieve a tenant from paying rent because the plumbing is found to be defective.

2. SAME—REPAIRS BY LANDLORD—TRESPASS.
The tenant, by complaining to the health department, having compelled the landlord to repair the plumbing, cannot complain of any trespass occasioned by the latter's entry on the premises for that purpose.

3. SAME—EVICTION—DELAY IN REPAIRS.
The delay of the plumber, employed by the landlord, in not prosecuting the work commenced by him for eight days, is not such an interference with the tenant's enjoyment of the premises as to constitute an eviction.

On exceptions from trial term.
Argued before OSBORNE and VAN WYCK, JJ.
*Brown & Dexter,* for plaintiff. *Brewster Kissam,* for defendant.

OSBORNE, J.  On November 1, 1886, plaintiff leased the premises No. 79 Remsen street to the defendant for three years and six months, at an annual rental of $1,200, payable monthly in advance. Plaintiff brought this action to recover for nine months' rent of said premises under said lease, commencing from May 1, 1888. Defendant admits that he entered into possession of the demised premises, and continued to occupy the same up to April 18, 1888; that plaintiff, on or about March 30, 1888, was notified by the department of health to make certain alterations or repairs, to remedy then existing violations of the Sanitary Code, including, among other things, "removing the earthen pipe from under basement floor, and substituting cast-iron pipe instead, properly caulked;" that plaintiff obtained extensions of time from the department of health up to May 6, 1888, to make the required alteration or repairs; that about April 10, 1888, in an alleged attempted compliance with said requirements, plaintiff, by her agents, entered upon the demised premises, tore up portions thereof, and for a long time left the same in an uninhabitable condition, and more dangerous and detrimental of health than before; and that on April 18, 1888, defendant and his family were compelled to move from said premises, and that such acts of the plaintiff constituted an eviction. Defendant had the affirmative on the trial, and, after putting in his testimony, his counsel requested the learned trial court to submit to the jury the questions—*First,* as to whether said premises had become untenantable and unfit for habitation, and whether defendant was not justified in vacating them under the act of 1860; and, *second,* as to whether or not plaintiff did not enter on the premises on April 10, 1888, and commence certain work, improvements, and repairs, and then abandon the work till April 18, 1888, and thereby interfere with the defendant's beneficial enjoyment of the premises. Both of these requests were refused, and defendant excepted. A verdict was directed for the plaintiff for the amount claimed, to which direction defendant's counsel excepted, and the exceptions were directed to be heard at the general term in the first instance, and that judgment be suspended in the mean time. Defendant's appeal is now before us on these exceptions.

It appears from the evidence in the case that defendant entered into possession of the premises about the time the lease bears date, November 1, 1886. The lease originally contained a printed clause requiring the tenant to make repairs, but, on defendant refusing to sign the lease with that clause in it, it was erased before execution. Within two weeks after defendant took possession, he testifies that he found difficulty with the sanitary condition of the premises, an odor of sewer gas pervaded the house, and on examination he discovered that the refuse from the plumbing, water-closets, etc., was in the area-way, under the stoop. He notified plaintiff, and she had it repaired. She also, at defendant's request, did other repairs. Plaintiff continued to occupy the premises up to the latter part of March, 1888, when, the bad odors still continuing, he made a complaint to the department of health about the sanitary condition of the premises. That department caused an inspection to be made, and thereupon, on March 30, 1888, plaintiff was directed to make certain alterations and repairs within five days. Subsequently the time to complete said repairs was extended to April 10th, and again to May 6th. About 10th April plaintiff's plumber started to do the required work. He commenced to excavate under the stoop, digging a hole about three and a half feet deep, and throwing the dirt upon the area steps, to the height of three or four feet. It was then found that the earthen pipe laid there was broken. The plumber covered over the hole, and left, and did not again return till April 18th, on the day the defendant removed from the premises. Evidence of the defendant's physician was offered to the effect that sewer gas pervaded the premises, causing the sickness and death of one of defendant's children, and making the other members of his family sickly. The foregoing is a substantial statement of the evidence adduced on the part of the defendant, and we are now to consider whether any of his exceptions, as above stated, are well taken.

1. Did the premises become untenantable under the provisions of chapter 345 of the Laws of 1860?[1] It seems to us that the construction of this statute as laid down in *Suydam* v. *Jackson*, 54 N. Y. 450, compels us to answer this query in the negative. There was no such destruction or injury to the demised premises after defendant took possession as to render them untenantable or unfit for occupancy. The statute seems to us to contemplate the happening of some event causing the destruction or injury after the commencement of the demised term. Here defendant admits that, almost as soon as he took possession, he noticed the presence of foul odors and sewer gas. *Bon* v. *Watson*, 4 N. Y. Supp. 872. There is no pretense here that there was any fraud or false representation, or concealment of any existing defects, on the part of the plaintiff at the time she leased the premises to defendant, which has been held in some cases to relieve the tenant from the obligations of his lease. In the absence of fraud, or any agreement that the premises were tenantable, plaintiff was not liable in case the demised premises were found to be untenantable. *Jaffe* v. *Harteau*, 56 N. Y. 398. Nor, is it conceded, was there any obligation on her part to make repairs. True, she did so on two occasions, at defendant's request, but that established no continuing liability so to do. It seems to us, therefore, that the act of 1860 did not release the defendant from his liability to pay rent under his lease, because the plumbing and water-closet arrangements were out of repair. In the language of EARL, J., in *Suydam* v. *Jackson, supra,* "If the legislature had intended

---

[1]Laws N. Y. c. 345, provides that "the lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied. "

to provide that the tenant should cease to be liable for rent when the premises from any cause become so damaged or out of repair as to be untenantable, it would have been easy to have expressed the intent in apt and proper language."

2. Did the acts of the plaintiff in commencing the repairs ordered by the health department, and not promptly completing them, interfere with defendants beneficial enjoyment of the premises, or, in other words, did they constitute an eviction?  It is well to note in this connection that, by the eighth clause of the lease in question, defendant agreed to allow plaintiff to enter said premises to make such necessary repairs as should be deemed requisite by her.  Again, defendant, by his complaint to the health department of the city, put in motion the legal machinery which compelled plaintiff to make the repairs in question.  He had a perfect right to do this, but having taken this step, and thereby compelled plaintiff, through her servants and employes, to enter upon the demised premises, we do not think that he is in a position to complain of any trespass occasioned thereby.

This brings us, then, to the consideration of the only question left on this branch of the lease, to-wit, was the delay of the plumbers employed by the plaintiff in completing the repairs a sufficient ground to constitute an eviction?  It appears that the plumber commenced work and did some excavating in the area about April 10th, and, for some unexplained reason, did not again proceed with the work in hand till April 18th, on which day defendant moved out of the premises.  It is conceded that the defendant made no complaint to the plaintiff of the delay in completing the repairs, although she lived next door to the demised premises.  The tardiness of mechanics in completing household repairs is, we think, a matter of general knowledge to all householders, and this case formed no exception to the general rule.  Plaintiff employed a plumber to make the required repairs, and there is no claim that he was an incompetent person.  In the absence of any complaint or notice from defendant, we think that plaintiff was justified in assuming that the repairs were proceeding in the usual way.  That the delay of the plumber employed by plaintiff in not proceeding with the work commenced by him for a period of eight days was such an interference with defendant's beneficial enjoyment of the premises as to constitute an eviction, and authorize him to abandon the premises, especially in the absence of any notice to the plaintiff of such delay, we are not prepared to hold.  Here was no wrongful act on the part of the landlord.  She was doing just what the defendant, through the department of health, had required her to do, and she was pursuing the usual course.  She was engaged in acts calculated to add to the habitability and enjoyment of the demised premises by the defendant.  While, of course, the principal is generally liable for the wrong-doing of her agents, we think that it would be a harsh and unwise application of that rule to hold, in the present instance, that, by the neglect of the plumber in promptly completing the work he was employed to perform, he could evict defendant from the demised premises so as to release him from all liability under his lease.

Defendant's counsel claims that certain questions should have been submitted to the jury.  We do not think this claim was well founded.  There was no conflict of evidence or dispute as to the facts.  Defendant alone offered evidence.  None was offered by plaintiff, so that there was substantially no question of fact for a jury to consider.  For the reasons above stated, we are of the opinion that defendant's exceptions should be overruled, and judgment ordered for the plaintiff on the verdict, with costs.