(27 Misc. Rep. 652.)

## MARKS v. DELLAGLIO.[1]

(Municipal Court of the City of New York, Borough of Manhattan. May, 1899.)

LANDLORD AND TENANT — CONSTRUCTIVE EVICTION — NUISANCE ON LEASED PREMISES.

> When a landlord permits the plumbing of a building which is maintained for the benefit of a number of tenants to become so out of repair that sewer gas and offensive smells enter the premises of a tenant used as a barber shop to such an extent as to endanger life and health and to drive away customers, it amounts to an eviction, and the tenant is justified in abandoning the premises, though at the time of his removal repairs are being made under orders from the health department, where repeated complaints previously made by him to the landlord were unheeded.

Action by Esther B. Marks against Nichola Dellaglio to recover rent. Judgment for defendant.

William C. Beecher, for plaintiff.

Ryan & Richards, for defendant.

GOLDFOGLE, J. This action was brought to recover rent of a basement, located at No. 4 Chatham square, for the months of February, March, and April, 1898, leased by the plaintiff to the defendant in August, 1893, for a term of 10 years, at a rental of $630 per annum. The defendant removed from the premises on the 1st day of July, 1897, and pleads the defense of eviction. The premises were let for the purpose of and were occupied as a barber shop. In the spring or summer of 1896 the defendant detected foul odors in the place, and complained of them to the plaintiff. Nothing was done towards remedying the condition that gave rise to these odors, and in the early part of May, 1897, the stench became so bad that the defendant renewed his complaints, informing the plaintiff that, unless repairs be made, he could not stay any longer in the shop. Customers of the defendant, who had been in the habit of getting shaved in the shop, complained of these offensive odors, and because of them discontinued coming to the shop, and the defendant lost their business patronage. An inspector of the health department, on making an official examination, and carefully applying proper tests, found that the odors were the result of sewer gas. The house drain, and branches of it, were in a defective condition. The iron pipe was broken. There were holes in it, which allowed the escape of sewer gas into the basement; and a subsequent examination revealed a defective earthenware house drain, which was the main pipe of the house. It was broken in several places. The joints between the soil pipe and the earthenware house drain were broken. The ground was saturated with all the sewage of the building and lodging house upstairs, and the result of these defects was to allow leakage of sewer gas into the ground underneath the cellar, and the escape of it throughout the building. The evidence unmistakably leads to the conclusion that the offensive odors were due to these broken drains and defective pipes, and the neglected condition of the plumbing work over which the plaintiff exercised control. The house had been used for a variety of purposes. The defendant's shop was but a small portion

[1] Reversed on appeal. See 59 N. Y. Supp. 509.

of the entire building. The defendant, after having suffered the serious annoyance incident to the conditions described, and the loss of custom in his business, in which cleanliness must necessarily be the essential rule, abandoned the premises, and refused to pay the subsequently accruing rent.

The general rule is that, in the absence of fraud or express agreement, there is no undertaking on the part of a landlord that the leased premises are tenantable for the purposes for which they are leased. Wood, Landl. & Ten. (2d Ed.) note, 1110; Tayl. Landl. & Ten. (8th Ed.) § 452; Hart v. Windsor, 12 Mees. & W. 84. Nor is the lessor under an obligation, in the absence of a covenant to the contrary, to make repairs to the place occupied by the tenant. But these rules do not justify a landlord in permitting those parts of a building provided for the common benefit of several tenants, and over which parts the landlord holds and exercises control, to fall into such a state of decay as to give rise to conditions dangerous to the health and life and destructive of the business of the occupants. Such neglect will constitute in law an eviction, and operate to discharge the tenant from further obligations under his lease. A tenant's right to abandon exists, and he becomes exonerated from the payment of rent, when the acts of the landlord, whether of commission or omission, though not amounting to physical eviction, are of so pronounced and offensive a character as to create a nuisance, and which, by preventing the reasonable use of the premises by the tenant, affects directly the consideration of the contract between the lessor and lessee. Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514. In Cowie v. Goodwin, 9 Car. & P. 379, which was an action for use and occupation, the tenant proved that the wall of the privy gave way, and the filth of it flowed into the kitchen, so as to render it uninhabitable. Lord Denman said, "I shall ask the jury whether the premises were unfit for proper and comfortable occupation, and if the defendant had bona fide quitted the apartments as soon as he could procure others," and, the jury having answered in the affirmative, the plaintiff was nonsuited, and on motion for a new trial the rule was refused. In the oft-cited case of Alger v. Kennedy, 49 Vt. 109, 24 Am. Rep. 117, the court held that, if the landlord let a part of the building, and permits the parts retained by him to fall into a state of such disrepair as to render the part occupied by the tenant untenantable, either by dilapidation or because the premises are thereby rendered unhealthy,—as if he permits a drain to remain stopped up, so as to emit sewer gases or unpleasant stenches,—this negligence amounts to an eviction. In Bradley v. De Goicouria, 14 Abb. N. C. 53, the fact was that the plumbing work of the apartment house occupied by a number of families had been for some time in a defective condition. Sewer gas escaped into the apartment occupied by the defendant, and the landlord failed to comply within a reasonable time with the order of the board of health to remedy the defect, and it was held that this amounted to a constructive eviction, and justified the tenant in abandoning the premises. In Thalheimer v. Lempert (Sup.) 1 N. Y. Supp. 470, the landlord failed to fix the drains and pipes, the result

of which caused serious annoyance, giving rise to stench, and conse-
quent unsanitary conditions; and the court held that this amounted
to a constructive eviction.　In Tallman v. Murphy, 120 N. Y. 346,
24 N. E. 716, an odor of coal gas sufficient to make the tenants sick,
and smoke in some of the rooms, and the frequent occurrence of loud
explosions, which shook the building, were held to constitute an evic-
tion.　In Tallman v. Earle, 3 Misc. Rep. 76, 23 N. Y. Supp. 17, the
smell of burning wood, so continuous and marked as to cause ap-
prehensions of fire, was held sufficient to justify the tenant in re-
moving from the premises.　In Sully v. Schmitt, 147 N. Y. 248, 41
N. E. 514, the court of appeals said:

"If the plaintiff's evidence had been received, it would have shown, or
tended to show, that when the landlord discovered the state of things under-
neath his room, and endeavored to remedy it by cleaning out the sewer, the
landlord not only made no change in its construction, but continued to main-
tain it in a disagreeable, and possibly dangerous, certainly offensive, condition,
by suffering the contents of her hotel sewer to flow into and refill the open
sewer as often as the tenant would clean it.　The neglect of the landlord would
seem to be monstrous, and to amount to the creation and continuance of a
nuisance upon the adjacent premises," which had been leased to the tenant.

It is urged by the learned counsel for the plaintiff, to whose brief I
have given careful consideration, that the landlord, prior to the re-
moval by the tenant, employed plumbers to make repairs to the de-
fective drain, and put the place into tenantable condition.　The evi-
dence shows that it was only in the latter part of June—a few days
prior to the tenant's removal—that the plumbers were at work dig-
ging up the drain, and it was not until the end of July that the work
was completed.　The tenant had suffered grievously from the land-
lord's neglect, and stood in danger of having his whole business
broken up, and his custom destroyed.　His health, if not his life, was
imperiled by the unsanitary condition into which the premises had
fallen for want of proper repairs to the general plumbing work; and
under these circumstances he was not bound to remain longer in the
premises, and await the possibility that repairs might eventually be
completed before the end of his term.　Having complained repeat-
edly without avail, the landlord is not to be allowed to urge that, be-
cause on the very eve of the tenant's departure from the premises
he put plumbers at work, the tenant should have given up the prem-
ises he had in the meantime secured at the hazard, probably of pe-
cuniary loss, not to speak of the risk of continued neglect on the part
of the lessor.　The plaintiff relies upon Dexter v. King (City Ct.
Brook.) 8 N. Y. Supp. 489, but the case is not analogous to the one at
bar.　There the defendant hired the entire house, and continued
to occupy it until the health department, upon his own complaint, di-
rected the making of certain repairs by the landlord.　The work was
begun on April 10th, but for some unexplained reason did not proceed
until April 18th, on which date the defendant removed.　It was con-
ceded in that case that the defendant made no complaint to the
plaintiff of the delay in not completing the repairs, although the lat-
ter resided next door to the demised premises.　It was not charged
that the mechanics employed were incompetent, and their tardiness

was not chargeable to the landlord. The facts, therefore, are clearly distinguishable from those now presented. In the case now under consideration complaints have been made frequently, and to them the plaintiff turned a deaf ear. The premises were let for the .purpose of a business which could not be successfully maintained in a place pervaded with obnoxious odors, foul stenches, and disgusting smells. The landlord had had ample opportunity to remedy this condition, and yet took no steps to do so until the board of health found it imperatively necessary to direct repairs. Lathers v. Coates, 18 Misc. Rep. 231, 41 N. Y. Supp. 373, seems to be clearly decisive of the questions now involved. That was an action for rent of an apartment house. The defendant set up his defense that the plaintiff had negligently permitted the premises to become untenantable, whereby the tenant was evicted. On an appeal to the appellate term of the supreme court in the First department, Daly, P. J., delivering the opinion of the court affirming a judgment for the defendant, said:

"The justice found that the proof clearly established the presence, for a considerable period, of foul and offensive smells and odors in the defendant's premises, and in the halls of the building in question, which were a menace to the health and comfort of the defendant and his family, and justified him in abandoning the premises; that the extent of these nuisances was admitted by the plaintiff's own witnesses; that they seriously interfered with the beneficial . enjoyment of the premises, and could have been easily cured by the plaintiff by the application of proper remedies, which he did not attempt with reasonable diligence. And, as the premises became unfit for occupancy, and their condition made it necessary for defendant to remove, the defense of eviction was made out. * * * The defendant moved about the middle of February. Odors first became noticeable in November, or early in December, and repeated complaints were made by the defendant to the superintendent. Disinfectants. so called, and perfumes, were resorted to without effect. Finally the board of health intervened, and extensive repairs were made upon the plumbing throughout the building. Holes large enough to be visible were found in the pipes in the tenant's apartments, and defects were found in the soil line, the waste lines, and the joints. * * * It is not alone the fact that it is a disagreeable odor, offensive to the sense of smell, but that it signifies a menace to life or health, and justifies the tenant in abandoning the premises. And so with indications of unsafety, of damage from fire, or the collapse of the building. To suffer some inconvenience is one thing; to endanger life or health is another."

Upon the subject of the tenant removing while repairs were contemplated and well under way, the court in the last-cited case distinguished Ryan v. Jones, 2 Misc. Rep. 65, 20 N. Y. Supp. 842, by saying:

"In that case the tenant, going out in April, as the cold began to moderate. attempted to justify his removal by the landlord's failure to provide sufficient heat during the preceding cold period. But the circumstances .here are very different. On the 8th of February the tenant gave notice that he was going to vacate as soon as he could make proper arrangements. On the 14th or 15th of that month he moved out, on which date the repairs were in progress, the bathroom being then disordered with the débris which had been torn away to get at the pipes that were concealed. Instead of assigning past conditions as a reason for removal, as was done in Ryan v. Jones, the defendant assigned a present condition, and the proof justified it. It would be a hardship upon an aggrieved tenant in such cases, if the law should hold, for instance, that he could not hire new premises to which to take his family except at the risk of being held to payment for the old one, if in the meantime the delinquent landlord should make the delayed repairs."

The defense of eviction in this case was amply justified by the proofs. The tenant, with due regard for his business interests and the health of himself and his customers, was justified in the abandonment of the premises, and he became exonerated from the payment of all rent, which, under the lease became payable after the 1st day of July, 1897. He is therefore entitled to judgment dismissing the complaint upon the merits.

Complaint dismissed.