SUNDERMAN and wife, Appellants, vs. WARNKEN and others, Respondents.

*October 16—November 18, 1947.*

472

P. F. *Leuch* of Milwaukee, for the appellants.

For the respondents Olga Warnken, Michael Hoepfl, and Helen Warnken there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *Alexander Cannon* and *Martin A. McLaughlin* of counsel, all of Milwaukee, and oral argument by *Mr. Cannon.*

For the respondent Francis L. Deppisch there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, *Leo B. Hanley* and *Richard F. Maruszewski,* assistant city attorneys, and oral argument by *Mr. Maruszewski.*

FRITZ, J.  Because of other matters stated in plaintiffs' complaint in connection with their allegations charging wrongful and illegal entry by defendants of a second-floor apartment leased to plaintiffs in a building owned by the defendants Warnken, all of the defendants moved to have plaintiffs make their complaint more definite and certain.  That

motion was granted by the court in an order in which it stated,—

"Therefore on the statement, admission and election of plaintiffs' counsel, it is hereby found that the complaint of the plaintiffs stands solely on a cause of action for damages for wrongful and illegal entry and does not seek to state any cause of action for conspiracy. . . ."

Thereupon, in answer to solely said cause of action, plaintiffs' allegations charging wrongful and illegal entry were denied in an answer filed by Francis L. Deppisch, a police officer, and also in a joint answer filed by Olga and Helen Warnken and Michael Hoepfl, defendants.

The material facts on this appeal are as follows. In 1944 the Warnkens inherited the property on which there was an old two-story building out of repair, the second-floor apartment of which was leased and occupied by plaintiffs, and the first-floor apartment by another tenant. There was a separate front-door entrance for each apartment, but for the joint use of the occupants of both apartments there was only one rear-door entrance from which there was a stairway to the kitchen door of the upper apartment. During the Warnkens' ownership prior to September 5, 1945, plaintiffs and also neighbors had made complaints to the Milwaukee city health department that there were conditions detrimental to health and safety in the building, including the plaintiffs' apartment and portions of the basement and attic used by them. Upon the health department's inspection of the premises pursuant to said complaints and upon its thereupon issuing orders in respect to remedying of said conditions by the Warnkens, they requested leave of plaintiffs to see the condition of the premises occupied by plaintiffs, but they were refused access thereto by plaintiffs. Upon the Warnkens being again so notified and ordered by the health department, the latter suggested to Olga Warnken that she have a city police officer accompany her to

plaintiffs' apartment, as she was afraid to go there alone and had been advised against doing so by a contractor who had similar trouble with plaintiffs. The health department then arranged to have her meet a police officer at a designated street corner, and also arranged with the police-department to have police officer Francis L. Deppisch meet her there, and she asked her seventy-five-year-old uncle, Michael Hoepfl, to accompany her. Upon the three defendants entering the unlocked rear-door entrance of the building about 1:30 p. m. on September 5, 1945, and going up the rear stairway to plaintiffs' apartment, the officer rapped at the rear door thereof, which was locked. Plaintiffs were away at their places of employment, and there was in the apartment only Dietrich Behling, who is a brother-in-law of the plaintiff, Lillian Sunderman, and who resided with the plaintiffs as a member of their household. He was seventy-eight years of age and somewhat deformed, and usually stayed in his room with instructions by plaintiffs not to open the door. Upon the officer rapping louder, Behling asked, "What is up;" and the officer replied "It is the police."

As to what then happened there is some conflict between the testimony of defendants and that of Behling. He testified Officer Deppisch ordered him to unbolt a latch on the inside of the door and to open the door; that he told the officer he was not to open the door when plaintiffs were not at home, but that he was afraid and did open it on the officer's order; and that the latter, Olga Warnken and Hoepfl went through the apartment and then left, and the officer again locked the door. On the other hand, they testified they did not enter through the upstairs rear door of the apartment, but that Behling told them to go around the front way and enter there; that there the officer unlocked, with his own house door key, the front entrance door and they then walked up the front stairway to the upper apartment, the front door of which was not locked, and was opened by Behling; and that they then entered the first room and looked around it, and through its doors looked

into the other rooms of the apartment. Plaintiffs contend defendants' testimony that they entered through only the front door is inconsistent with an allegation in the officer's pleading, which plaintiffs claim can be construed to constitute an admission that he entered by the rear door of the apartment because there are,—in connection with his allegation in relation to that door, "that the door was not opened,"—the allegations that he "admits that he used a key to unlock the door and entered the house of the plaintiffs but further alleges that he used a key to unlock the door with the consent of an occupant of the home and entered the house only after having received permission from the occupant." From the context of the last-quoted allegations and the preceding allegation that the upper rear door was not opened, it is obvious that the later allegations were solely in relation to the unlocking by the officer of the lower front entrance door at the foot of the stairway leading up to the front door of plaintiffs' apartment.

While said defendants were in the apartment or the premises, none of them made any search, or disturbed, or attempted to seize anything therein. No force, threat, or disturbance accompanied their call, and there was a clear, definite, and truthful reason given for the purpose thereof and the presence of the police officer. They were calm; they were there solely to observe and determine whether and what was necessary to remedy the alleged unsafe or unsanitary conditions complained of; and it was only for that purpose that the condition of the premises was inspected by solely visual act and inoffensive observation, without any malicious motive or intent. And there was no injury or damage whatever as the result of their presence or conduct to plaintiffs or Behling or their rights to the exclusive use and enjoyment of the premises. In view of those undisputed facts and circumstances it was of no material consequence upon the legal questions determinative of the cause of action, whether, as Behling testified, he answered the officer's request to be allowed to enter through the rear door, by stating that he had no key, and that he testified that

the officer used his own key. According to Behling's own testimony such entrance would become possible only upon his releasing a bolt or latch which, if not released by him, would have prevented any entry by defendants. They denied that they entered that rear door. And when they went, as they and likewise Behling testified, to the front door and up the front stairway to the upper hall, the door to plaintiffs' apartment was opened for them by Behling; and the police officer used his own key to open the lower front door, which was pursuant to Behling's statement to enter in that way. As Judge GEHRZ rightly stated, in his decision granting defendants' motion for a directed verdict,—

"An inspection of said premises under these circumstances, made at a reasonable time of the day, especially when ascertainment of facts with respect of fire and health hazards had become necessary, cannot be characterized as an unlawful object on the part of either of the lessors or of those who assisted them in that task. . . . The occurrence of . . . September 5, 1945, was not accompanied by any force, threat or disturbance of any kind. It happened at a reasonable afternoon hour and in the absence of the plaintiffs Sunderman. . . . Behling . . . does not claim any insult or abuse or that he was in any manner shocked, upset or placed in fear by any act or conduct of the defendants. Nothing within the place was touched, moved or disturbed. No harm or injury resulted to anyone or to anything or property. No malicious motive was evinced by any of the visitors. . . . It follows that there is no room for punitory damages. Only a visual and inoffensive observation of the condition of some of the rooms and the walls was made. Everything then observed had previously been made known or emphasized between the plaintiffs and their lessors and had even reached the public authorities by means of various complaints requiring attention in the interests of public safety and health. . . . The mere looking into rooms or at walls injured nothing or no one. . . . The plaintiffs Sunderman sustained no damages whatever by reason of the occurrence of September 5, 1945."

There is not involved herein any question of any search or intended seizure of any property. While defendants were at the premises, plaintiffs were not present and neither they nor any of their property suffered any physical injury, or any fright, shock, or mental distress, or interference or deprivation in any respect of their use, possession, or enjoyment of the premises leased to them. Consequently, there was no showing of damage for which recovery could be had. *Waube v. Warrington,* 216 Wis. 603, 258 N. W. 497. As there is a complete absence of any actual damage to the plaintiffs of any nature or description under any view of the case, and the maximum that the plaintiffs could possibly have hoped to recover would be nominal damages, there is applicable the rule that no punitory damages can be recovered where the compensatory damages are merely nominal. *Barnard v. Cohen,* 165 Wis. 417, 162 N. W. 480.

As the evidence establishes conclusively that the inspection of the premises was made for the sole purpose of ascertaining what would have to be done by the Warnkens as landlords in remedying, in compliance with the health department's orders, alleged unsafe or unsanitary conditions, about which plaintiffs and neighbors had made complaints, and that because of plaintiffs' refusals to permit any such inspection, it was proper for Olga Warnken, pursuant to the health department's directions and arrangements to have the police officer accompany her for the purpose of preserving order and preventing trouble, the inspection peaceably and reasonably made in point of time and manner cannot be deemed a wrongful entry of the premises. Consequently, we consider applicable herein the rules (although there is some conflict in the authorities) that,—

"It does not constitute a breach of the covenant for the landlord to enter upon the leased premises in order to make necessary repairs, as required by public officials" (62 A. L. R. 1280);

478

"A tenant cannot recover damages for an entry by the landlord upon requirement of the building department for the purpose of making repairs necessary to place the building in a safe condition, when due care is taken to avoid interference with the business of the tenant" (2 McAdam, Landlord and Tenant, p. 1344, sec. 317);

"An entry by a landlord upon demised premises to comply with an order of a city department to make repairs therein is not an eviction nor the acceptance of a surrender" (2 McAdam, Landlord and Tenant, p. 1345, sec. 317).

*White v. Thurber*, 2 Silvernail, 119, 55 Hun, 447, 8 N. Y. Supp. 661; *Dexter v. King*, 8 N. Y. Supp. 489; *Lantry v. Hoffman*, 105 N. Y. Supp. 353; *Coffin v. United Mfg. Trimming Co.* 85 Misc. 402, 147 N. Y. Supp. 463; *Flanders v. New Hampshire Sav. Bank*, 90 N. H. 285, 7 Atl. (2d) 233; *Moore v. Dresden Investment Co.* 162 Wash. 289, 298 Pac. 465; *Yall v. Snow*, 201 Mo. 511, 100 S. W. 1.

*By the Court.*—Judgment affirmed.