SCOTTISH GUARANTEE INSURANCE COMPANY, LIMITED, Plaintiff–Appellant,

v.

Dennis B. DWYER, Defendant–Appellee.

No. 92–4142.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1993.

Decided March 18, 1994.

Thomas R. Schrimpf (argued), Jeffrey S. Fertl, Hinshaw & Culbertson, Milwaukee, WI, for plaintiff-appellant.

Edwin E. Brooks, Karyn G. Gershon (argued), Richard M. Seligman, Lori Meehan, Katten, Muchin & Zavis, Chicago, IL, for defendant-appellee.

Before BAUER, CUDAHY, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This diversity case requires us to consider a question we reserved in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir.1992)—whether allegations of negligent trespass to property constitute a "wrongful entry" under the "personal injury" portion of a commercial insurance policy. We were able to sidestep this question under Illinois and Missouri law in *Pipefitters* because the definition of a "personal injury" in the policy there was not limited to either a wrongful entry or an eviction; it also encompassed "other invasion[s] of the right to private occupancy." *Id.* at 1040. We thus relied on that catch-all phrase in finding that the insurer had a duty to defend its insured against a negligent trespass claim. *Id.* at 1041–42. The policy here, however, does not provide this easy way out, as it defines a personal injury only as a "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises." We nonetheless hold that under Wisconsin law, the insurer is obligated to defend its insured because the underlying complaints allege a wrongful entry within the meaning of the policy. We thus affirm the district court's judgment to that effect.

## I. BACKGROUND

This declaratory judgment action grows out of two complaints filed against Dennis Bruce Dwyer and others in the Circuit Court of Rock County, Wisconsin (the "Rock County actions"). The plaintiffs in the two suits owned various parcels of real property, including ground wells, in Beloit, Wisconsin that allegedly were contaminated when chemicals were released into the soil during a fire on the neighboring property of Dwyer's father. The blaze destroyed a building that housed materials used in Dwyer's insulation business as well as pesticides and herbicides used in his father's seed and fertilizer business. The chemicals allegedly were washed into the ground with the water utilized to fight the fire. The plaintiffs in the underlying suits allege that the chemicals have infiltrated their wells, contaminating their water supplies. They allege damage to their real property as well as personal injuries caused by the ingestion and use of the contaminated water. The complaints assert an entitlement to relief under various legal theories, the most important for our purposes being a negligent trespass to property.

Dwyer tendered the suits to Scottish Guarantee Insurance Company, Limited ("Scottish") for defense and indemnification under a policy he had purchased for his insulation business. Scottish denied a defense on the ground that the allegations in the underlying

complaints fell under the policy's pollution exclusion.[1] Scottish later filed this declaratory judgment action under our diversity jurisdiction, again asserting that it had no duty to defend or to indemnify Dwyer under the policy. Dwyer counterclaimed, alleging coverage under the personal injury portion of the policy, which he maintained is not subject to the pollution exclusion. By its terms, the pollution exclusion applies only to bodily injury and property damage liability ("Coverage A"), and the parties agreed below that this exclusion negates any duty to defend under Coverage A. Yet a separate provision provides coverage for personal or advertising injuries ("Coverage B"), and that portion of the policy, as Dwyer noted below, is not subject to the pollution exclusion. Scottish maintained, however, that the Rock County complaints do not allege "personal injuries" as that term is defined in Coverage B.

The parties filed cross-motions for summary judgment on Scottish's duty to provide a defense under the policy's personal injury provision. The district court referred the motions to a magistrate-judge, who recommended that Dwyer's motion be granted. The district court adopted that recommendation and held that Scottish has a duty to defend the Rock County lawsuits because the complaints there arguably allege a wrongful entry within the scope of Coverage B. The court also granted Dwyer's motion for attorney's fees and costs. We review the district court's grant of summary judgment de novo. *Pipefitters,* 976 F.2d at 1039; *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 905 (7th Cir.1990). Under Wisconsin law, which the parties agree is governing here, the construction of language in an insurance policy is a question of law that we consider independently of the lower court. *Continental Corp. v. Aetna Casualty & Sur. Co.,* 892 F.2d 540, 543 (7th Cir.1989); *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis.2d 808, 456 N.W.2d 597, 598 (1990).

## II. DISCUSSION

### A. Duty to Defend

In determining whether Scottish has a duty to defend Dwyer under Wisconsin law, we look to the allegations in the Rock County complaints, as we must determine whether those complaints "allege facts which, if proven, would give rise to liability covered under the terms and conditions of the policy." *Sola Basic Indus., Inc. v. United States Fidelity & Guar. Co.,* 90 Wis.2d 641, 280 N.W.2d 211, 213 (1979); *see also Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis.2d 824, 501 N.W.2d 1, 5 (1993); *School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis.2d 347, 488 N.W.2d 82, 87–88 (1992). We are concerned only with the nature of the claims alleged against the insured, and not with their relative merits. *School Dist. of Shorewood,* 488 N.W.2d at 87. Any doubt about the duty to defend must be resolved in favor of the insured. *Id.; see also Newhouse,* 501 N.W.2d at 5.

Wisconsin treats an insurance policy as any other contract and applies the same rules of construction. *Maas v. Ziegler,* 172 Wis.2d 70, 492 N.W.2d 621, 624 (1992); *Atlantic Mutual,* 456 N.W.2d at 598; *Kremers–Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 351 N.W.2d 156, 163 (1984). Wisconsin courts construe contracts so as to carry out the intentions of the parties, and they accord language in an insurance contract "the common and ordinary meaning it would have in the mind of a lay person." *Kremers–Urban Co.,* 351 N.W.2d at 163; *see also Grotelueschen v. American Family Mut. Ins. Co.,* 171 Wis.2d 437, 492 N.W.2d 131, 134 (1992). The test under Wisconsin law is not what the insurer intended by its use of certain language, "but what a reasonable person in the position of the insured would have understood the words to mean." *Kremers–Urban Co.,* 351 N.W.2d at 163; *see also Ziegler,* 492 N.W.2d at 625; *School Dist. of Shorewood,* 488 N.W.2d at 88–89. Any ambiguity in the scope of cover-

---

1. The pollution exclusion excludes from coverage:

 "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises you own, rent or occupy....

age must be resolved in favor of the insured, and policy exclusions are to be construed narrowly against the insurer. *Atlantic Mutual*, 456 N.W.2d at 598; *see also Continental Corp.*, 892 F.2d at 543. An ambiguity arises when words or phrases in a policy "are susceptible to more than one reasonable construction;" yet, when the terms of an insurance policy are plain and unambiguous, the court must apply those terms as written. *Atlantic Mutual*, 456 N.W.2d at 598; *see also Grotelueschen*, 492 N.W.2d at 134. We must not construe the present policy so as to "include insurance coverage not agreed to by the parties and for which [Scottish] was not paid." *School Dist. of Shorewood*, 488 N.W.2d at 89; *see also Ziegler*, 492 N.W.2d at 624.

 The Scottish policy defines a "personal injury" as:

injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right to privacy.

Dwyer maintains that the chemical trespass counts of the Rock County complaints allege a "wrongful entry" under the policy. Scottish concedes that the underlying actions allege a negligent trespass, but it maintains that the term "wrongful entry," like the other offenses constituting "personal injuries" under Coverage B, requires an intentional rather than merely a negligent act. *See, e.g., Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203, 209 (5th Cir.1991) ("Each of the enumerated risks specifically assumed re-quires active, intentional conduct by the insured.").

We addressed a similar argument in *Pipefitters*.[2] There, a "personal injury" was defined as, among other things, a "wrongful entry or eviction or other invasion of the right to private occupancy." 976 F.2d at 1040. The insurer maintained, as Scottish does here, that this definition only encompassed conduct evidencing an intention to take possession of the property or to deprive another of its right to occupancy. Because its insured lacked such an intent when it negligently permitted toxic chemicals to contaminate another's property, the insurer argued that the underlying complaint did not allege a "personal injury" within the scope of the policy. We agreed that the plain meaning of the term "eviction" denoted an intention to deprive another of the right to private occupancy. *Id.* Yet we then considered whether the term "wrongful entry" or the phrase "other invasion of the right to private occupancy" denoted a similar intent. We concluded that "[b]oth Missouri and Illinois courts recognize that wrongful entry is substantially similar to trespass" and that neither jurisdiction has required that a trespassing intruder "intend to take possession of the encroached-upon premises, or to deprive occupants of their right to possess those premises." *Id.* at 1041. At the very least, we found the term "wrongful entry" to be ambiguous and construed that term against the insurance company, concluding that "one can commit a wrongful entry under Missouri and Illinois law without intending to deprive the occupant of his right of occupancy." *Id.* at 1041–42. Applying the principle of *ejusdem generis* to the more general "other invasion" phrase, we determined that a similar motive also was not required there. We thus found the allegation of chemical trespass in the underlying lawsuits to be an "other invasion of the right to private occupancy," although we stopped short of decid-

2. Scottish maintains that *Pipefitters* has no application because it involved Illinois and Missouri rather than Wisconsin law, and because the pertinent policy language there differs from that in the Scottish policy. Although Scottish is correct that *Pipefitters* does not control our decision here for those reasons, it remains highly relevant, as it establishes the framework we must follow in determining whether a claim falls under the personal injury portion of such a policy.

ing whether it also constituted a wrongful entry. *Id.*

The approach we utilized in *Pipefitters* was followed by the Wisconsin Court of Appeals in *City of Edgerton v. General Casualty Co.,* 172 Wis.2d 518, 493 N.W.2d 768, 780–81 (App.1992), *review granted,* 497 N.W.2d 130 (Wis.1993). The definition of "personal injury" in the *Edgerton* policy was identical to the definition we considered in *Pipefitters,* and like us, the *Edgerton* court rejected the insurer's argument that this definition required an unprivileged taking of real property. Instead, the court relied on its earlier decision in *Fortier v. Flambeau Plastics Co.,* 164 Wis.2d 639, 476 N.W.2d 593, 608–09 (App.1991), to conclude that a negligent trespass was an actionable tort under Wisconsin law and that such a trespass constituted an "other invasion of the right of private occupancy" under the policy. *Edgerton,* 493 N.W.2d at 780–81. Yet because *Edgerton,* like *Pipefitters,* relied on the policy's "other invasion" language, it too does not control this case. *Edgerton* is instructive, however, in that it, like *Pipefitters,* rejected the very argument Scottish makes here—that only intentional acts are encompassed by Coverage B. The question left unanswered in both *Edgerton* and *Pipefitters* is whether a negligent trespass constitutes not only an "other invasion of the right of private occupancy," but also a "wrongful entry."

■ The parties have directed us to little Wisconsin authority on this question. Scottish asserts that the term "wrongful entry" has been used by Wisconsin courts in only one context—the improper entry by a landlord onto the leased property of a tenant. (Scottish Br. at 14 (citing *Simhiser v. Farber,* 270 Wis. 420, 71 N.W.2d 412 (1955); *Sunderman v. Warnken,* 251 Wis. 471, 29 N.W.2d 496 (1947)). Yet as the district court observed, nothing in either *Simhiser* or *Sunderman* suggests that the tort should be limited to landlord-tenant disputes. (Opinion and Order at 7.) When faced with a similar lack of controlling authority under New Hampshire law, Judge Fairchild concluded

that the tort of wrongful entry "most closely resembles that of trespass." *Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265, 272 (1st Cir.1990); *see also Pipefitters,* 976 F.2d at 1041 ("Both Missouri and Illinois courts recognize that wrongful entry is substantially similar to trespass"). *Edgerton* leans in that direction as well, leading us to believe that a Wisconsin court would equate the policy's use of the term "wrongful entry" to the tort of trespass.[3]

■ The only remaining question is whether a Wisconsin court would recognize a cause of action for negligent trespass. In *Fortier,* the Wisconsin Appellate Court considered whether allegations that the defendant's toxic chemicals "seeped or leached ... to the plaintiffs' nearby properties, contaminating their residential water wells and causing them personal injury and economic loss" stated a claim for trespass. 476 N.W.2d at 597. The court explained that a trespass "may be either an intentional intrusion or an unintentional intrusion resulting from reckless or negligent conduct...." *Id.* at 608. With respect to unintentional intrusions, the court adopted Restatement (Second) of Torts § 165 (1965), which provides:

> One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, [or] to a thing or a third person in whose security the possessor has a legally protected interest.

*Id.; see also Edgerton,* 493 N.W.2d at 780–81 (confirming that a negligent trespass is actionable); *cf. Wisconsin Power and Light Co. v. Columbia County,* 18 Wis.2d 39, 117 N.W.2d 597, 600–01 (1962) (assuming without deciding that a negligent trespass is actionable). There is thus no question that a negligent trespass, as alleged by the plaintiffs in the Rock County lawsuits, states a claim for relief under Wisconsin law. We think a rea-

---

**3.** Indeed, Magistrate Judge Crocker's exhaustive research below revealed that in other states, "litigants and courts sometimes use the term 'wrong- ful entry' interchangeably with the term 'trespass.'" (Report at 13.)

sonable person in the position of Dwyer would have understood the term "wrongful entry" in Coverage B to include such an unintentional trespass.[4] At the very least, the policy's use of the term is ambiguous, and we must resolve any ambiguity in favor of coverage. *Atlantic Mutual,* 456 N.W.2d at 598; *see also Pipefitters,* 976 F.2d at 1041; *Gould Inc. v. Arkwright Mut. Ins. Co.,* 829 F.Supp. 722, 729 (M.D.Pa.1993). Scottish therefore has a duty to defend Dwyer in the Rock County actions.

### B. *Fees and Costs*

■ Scottish also challenges the district court's order requiring it to pay Dwyer's attorney's fees and costs in this coverage dispute. The district court based its decision on *Elliott v. Donahue,* 169 Wis.2d 310, 485 N.W.2d 403 (1992), which we also find controlling. There, the Wisconsin Supreme Court held:

> The insurer that denies coverage and forces the insured to retain counsel and expend additional money to establish coverage for a claim that falls within the ambit of the insurance policy deprives the insured the benefit that was bargained for and paid for with the periodic premium payments. Therefore, the principles of equity call for the insurer to be liable to the insured for expenses, including reasonable attorney fees, incurred by the insured in successfully establishing coverage.

*Id.,* 485 N.W.2d at 408 (citing 7C John Alan Appleman, *Insurance Law and Practice* § 4691, at 281–83 (Berdal ed. 1979)). *Elliott* further found that Wis.Stat. § 806.04(8) authorizes an award of fees and costs, as it permits the court in a declaratory judgment action to provide " '[f]urther relief . . . whenever necessary or proper.' " *Elliott,* 485 N.W.2d at 409 (quoting Wis.Stat. § 806.-04(8)). Such further relief, the court held, "may include a recovery of attorney fees incurred by the insured in successfully establishing coverage under an insurance policy." *Id.* Scottish's attempt to distinguish *Elliott* on the basis of its differing policy language is

unavailing. *See United States Fire Ins. Co. v. Good Humor Corp.,* 173 Wis.2d 804, 496 N.W.2d 730, 742 (App.1993) (interpreting *Elliott* to mean "that an insured may collect attorney fees and costs expended in successfully proving coverage"). The district court's award of attorney's fees and costs was proper.

The district court's judgment is in all respects

AFFIRMED.

---

4. Having concluded that the Rock County complaints allege facts with the scope of Coverage B, there is no question that Coverage A's pollution exclusion would not apply. *See Pipefitters,* 976

F.2d at 1042 (calling the insurer's argument to the contrary "nearly sanctionable"); *Titan Holdings,* 898 F.2d at 270; *Edgerton,* 493 N.W.2d at 781–82.